HENRY HICKMAN, Respondent, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, May 24, 1886.

1. NEGLIGENCE—MASTER AND SERVANT—OBLIGATION AND LIABILITY. While the master is not an insurer of the employe's safety, yet he must furnish him with machinery and appliances suitable to the use it is intended to be put. And he must not only furnish it originally, but must use ordinary care and diligence to see that it is kept in that condition. The servant has a right to expect this. If a defect, unknown to the servant, exists, which is chargeable to the master's negligence, in either of these respects, the master is liable.

2. DAMAGES FOR TORT—MEASURE OF AS LIMITED BY STATUTE (SECTION 2123, REVISED STATUTES)—CASE ADJUDGED.—In actions for injuries resulting in death, by negligence of the master, under the statute (ch. 25, Rev. Stat.), as in this case, the measure of damages provided by the statute is, "such damages, not exceeding two thousand dollars, as the jury may deem fair and just, with reference to the necessary injury resulting from such death to the surviving parties who may be entitled to sue, and also having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect or default." Sect. 2123, Rev. Stat. In the absence of evidence tending to show aggravation the word "necessary" is used as of the same import as *pecuniary*, and the damages are merely compensatory. In this case, it is declared by the court in an instruction that there is no evidence of any circumstances of aggravation. *Held*, that having regard to the statute rule as to the measure of damages, and the evidence as produced at the trial (showing the expenses attending the injury and burial, the value of the son's services during minority, less the expense of supporting him, etc.,) the verdict in this case, is excessive.

APPEAL from Pettis Circuit Court, HON. JOHN P. STROTHER, Judge.

*Reversed and remanded.*

The case is stated in the opinion.

THOS. G. PORTIS and WM. S. SHIRK, with THOS. J. PORTIS, for the appellant.

I.   The petition shows upon its face that deceased had *once been married.* Therefore, although he died while a minor, and left neither wife nor children surviving him, the father could maintain no action under the statute. Sects. 2121 and 2122, Rev. Stat. ; *Barker v. Hann. & St. Jo. Railroad,* 85 Mo—; *McNamara v. Staten,* 76 Mo. 329.

II.   Incompetent and irrelevant evidence was *admitted,* neither establishing negligence nor incompetency by defendant's servants in the performance of their duties. Pierce on Railways (1 Ed.) 382. So the court *excluded* competent and relevant evidence offered by defendant.

III.   But the main error in the case is in the action of the court in refusing to sustain defendant's demurrer to the evidence, and in giving the plaintiff's instructions. The *evidence* did not entitle plaintiff to recover ; and there was no evidence on which to base the plaintiff's instructions. To make a master liable for injury caused by defective machinery, or which, from use, has come to be out of repair, the evidence must show that the master knew of the defect, or could have known it by diligence. Shearm. & Redf. Neg. sect. 99 ; Wood on Master & Servant (1 Ed.) sect. 344 ; *Porter v. Railroad,* 71 Mo. 66 ; *Duskin v. Sharp,* 88 N. Y. 225. The burden of proof is on the servant to show that the company was negligent ; and it is necessary to show something else besides the mere fact that the defect existed,

*Elliott v. Railroad,* 67 Mo. 272 ; Pierce on Railways, 382, notes 3 and 4.

IV.   The damages were flagrantly excessive and were assessed contrary to the instruction given for defendant.   Under the petition and evidence the father was only entitled to compensatory damages.   *Frick v. Railroad,* 75 Mo. 542 ; Pierce on Railways, 393.

V.   The parent may emancipate his child and divest himself of any right of service.   *Ream v. Walkins,* 27 Mo. 519.   It was done here and plaintiff suffered no loss.   *Iron Co. v. Rupp,* 100 Pa. St. 95.

SANGREE & LAMB and WILKERSON & MONTGOMERY, for the respondent.

I.   It was the duty of defendant to have not only furnished safe and suitable machinery and appliances, but to have maintained the same in that condition ; or to have exercised reasonable care and watchfulness to guard against their being out of order and unsafe.   *Flynn v. Railroad,* 78 Mo. 203 ; Wood on Master and Servant (1 Ed.) sect. 329, p. 688.

II.   If defendant could have discovered the defect by the use of ordinary care, and failed in this respect, and, by reason of the defect, injury was sustained, the plaintiff is entitled to recover.   *Gibson v. Railroad,* 46 Mo. 163 ; Wharton on Negl., sect. 212 ; *Smith v. Railroad,* 69 Mo. 36.

III.   The instructions given for plaintiff submit to the jury whether or not the defect in the brake shaft was such as would have been discovered by the master had he exercised ordinary care.   This is the proper issue, and it was for the jury to decide it.   *Railroad v. Van-Steinburg,* 17 Mich. 122 ; Thomp. on Negl. 1236 ; *Hackett v. M. M. Co.,* 101 Mass. 101 ; *Wyatt v. Railroad,* 55 Mo. 485 ; *Norton v. Ittner,* 56 Mo. 351 ; *Stoddard v. Railroad,* 65 Mo. 514.

IV.   Plaintiff assumed the burden of showing negligence, and that the defect would have been known had

defendant been exercising ordinary care. This was all that was required. In the absence of proof as to the manner in which the injury was inflicted, it may be inferred from the jury. Wood on Master and Servant (1 Ed.) 762 ; Wharton on Negl., sect. 428.

V. The opinion in *Philpot v. Mo. Pac. Ry. Co.* (85 Mo 164), is a sufficient answer to the argument on the question of emancipation.

VI. The question of the *amount* of damages was fairly submitted to the jury. It had the right to consider his prospect for promotion, as well as all the circumstances of the case.

ELLISON, J.—Plaintiff brings this action for the death of his minor son alleging himself to be the sole surviving parent. He recovered a judgment for $2,250.00 and defendant appeals to this court.

The son was a brakeman in defendant's service, and, at his decease, was eighteen years and three months of age. His death was caused by the severing of a brake rod while he was engaged in setting a brake. He was doubtless thrown from the car by the sudden giving way of the rod. It was clearly shown that there was a crack or flaw in the rod, of near a quarter of an inch in depth, at the point where the rod passes through the clasp which is attached to the top of the car, and that this defect was covered by the clasp so that it could not be seen by ordinary observation. The defect had existed for some time, as it was old looking and rusty, while the remaining portion of the rod showed a fresh break.

It is not directly shown by the testimony whether this defect was in the rod when originally placed on the car, or whether it was caused by subsequent use. From the nature of it, it would appear more probable that it was originally placed on the car in the defective condition. One of defendant's instructions submits that idea to the jury by conceding, in effect, if such was the fact, the finding would be for the plaintiff. The main errors

complained of consist in the court refusing defendant's demurrer to the evidence and refusing to set aside the verdict for excessive damages.

We do not care to set out the evidence in detail, but deem it sufficient to say that it justifies a finding in plaintiff's favor. While the master is not an insurer of the employe's safety, yet he must furnish him with machinery and appliances suitable to the use it is intended to be put; and he must not only furnish it originally, but must use ordinary care and diligence to see that it is kept in that condition. The servant has a right to expect this. If a defect, unknown to the servant, exists, chargeable to the master's negligence in either of the above respects, he is liable. There is no pretense in this case that deceased knew of the condition of the rod; it was hidden from his observation; he is not required to search for latent defects as a condition precedent to his right of recovery. The case has been tried with fairness and substantial accuracy with the exception of the amount of the verdict. The sum returned for plaintiff is not justified by the evidence.

II. The question, then, is, what is the measure of damages in actions of this nature? The statute, section 2123, is, that "the jury may give such damages, not exceeding two thousand dollars, as they may deem fair and just, with reference to the necessary injury resulting from such death, to the surviving parties who may be entitled to sue; and also having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect or default." This statute differs from a similar one in many other states, in that we have the words necessary injury, instead of pecuniary injury; and we also have regard to the "mitigating or aggravating circumstances," which the others have not. In the absence, however, of evidence tending to show aggravation the word necessary is used as of the same import as pecuniary (*Morgan v. Durfee*, 69 Mo. 478), and the damages are merely compensatory. *Joice v. Branson,*

73 Mo. 28. So, too, it is held with us, that while the command of the statute is that we shall have regard to circumstances of aggravation, and in this respect go beyond mere compensation for the necessary or pecuniary loss, yet, in the absence of evidence of aggravation, nothing more than the pecuniary loss is permitted to be allowed as damages. *Owen v. Brokschmidt,* 54 Mo. 289 ; *Morgan v. Durfee, supra; Joice v. Branson, supra.*

In this case there is no evidence of any circumstances of aggravation ; and so the circuit court declared in an instruction. The case, then, is left purely on the basis of compensation to plaintiff for his pecuniary loss, and in estimating this loss we "are to be confined to injuries of which a pecuniary estimate can be made, and cannot take into consideration the mental suffering occasioned to the survivors by the death, and that nothing may be allowed as a *solatium*, that being incapable of a pecuniary estimate, nor for the suffering of the injured party." *Pennsylvania Ry. Co. v. Zebe,* 38 Pa. St. 318 ; *Telfer v. Ry. Co.,* 1 Vroom, 188.

What, then, was plaintiff's pecuniary loss by the death of his son ? The expenses attending the injury and burial of deceased are such as a father is legally responsible for ; these should be allowed him.

He is entitled to the services of his son during his son's minority, and is under obligation to feed, clothe and care for him for the same period.

He has, therefore, lost the value of his son's service by the wrong of defendant and he is entitled to the full value thereof, less the expense of supporting him. The loss of service should be confined to the period of the son's minority. *Rains v. Ry. Co.,* 71 Mo. 164, 169 ; *Pennsylvania Ry. Co. v. Zebe, supra; State to use of Coughlan v. Ry. Co.,* 24 Md. 84. For this covers the period in which the parent has the legal right to the service of his child. Whatever moral obligation there may be on the part of children

past majority to support their indigent parents, the law, in the absence of a statute, recognizes no legal obligation on their part to support them, or legal right in the parent to demand it. 2 Kent, 207. This natural duty of the child to the parent has been, from an early period in the world's history, an object of statutory solicitude, but, in the absence of legislation, the distinction between the natural and the legal duty remains. It has, indeed, been held, in the case of *Potter v. Railway Company* (21 Wis. 372 and 22 Wis. 615), that proof of the indigent or dependent condition of the parents would authorize the jury to "take into account the reasonable expectation of pecuniary benefit from the continuance of the life beyond minority." I am not able to reconcile this view with some of the fundamental elements governing the measure of damages. It is certainly speculative and conjectural in the extreme. A child of tender years may be killed, and, at the date of its death, its parents may be in very dependent or indigent circumstances, and yet, before the period of the child's majority, may have, in the vicissitudes of fortune, become affluent. The law is stated, more in accordance with the fixed principles governing damages, in the case of *State to use of Coughlan v. Railway Company*, (24 Md. 107), where the court say : "The law entitles the mother to the services of her child during his minority only (the father being dead) ; beyond this, the chances of survivorship, his ability and willingness to support her, are matters of conjecture too vague to enter into an estimate of damages merely compensatory. According to appellant's theory the mother and son are supposed to live on together to an indefinite age ; the one craving sympathy and support, the other rendering reverence, obedience and protection. Such pictures of filial piety are inestimable moral examples, beautiful to contemplate, but the law has no standard by which to measure their loss."

If a child, over the age of twenty-one years at the

time he may be killed by negligence, is actually, at that time, engaged in the service of his parents as a member of the family, a different question would be presented. It was said in *North Pennsylvania Railway Company v. Kirk* (90 Pa. St. 15), that "if there be reasonable expectation of pecuniary advantage from a person bearing the family relation, the destruction of such expectation by negligence occasioning the death of the party from whom it arose will sustain the action." The son in that case was twenty-eight years old and was, at the time of his injury, engaged in the service of his father, without compensation. Such question, however, is not presented in the present case.

In this case, as I have shown, the only damage recoverable, under the evidence, is a "just and fair" compensation for the *pecuniary* loss to plaintiff. While it is difficult to make clear just what the loss amounts to in such cases, yet it must be shown by evidence. Much, of course, from the nature of the action, must be left to the common sense and fairness of the jury, yet the jury should not act in an unrestrained or irresponsible manner. They must draw their inferences, from the evidence and law as presented, with fairness and reason. There was evidence here, proper for the jury to consider, showing the probable money loss to the plaintiff by the death of his son. He was shown to be eighteen years and three months old, that he was stout and healthy, and was then engaged in a labor which brought him an average of fifty dollars per month. It was further shown that the expenses, attending his injury, including his funeral, were two hundred dollars. It does not appear from the evidence what the expense of keeping and caring for the boy, including his board and clothes, would be. At fifty dollars per month he would have earned, during his minority, $1,650, making no allowance for any increase of wages, as there is nothing in the evidence from which we can gather a reasonable probability of larger earnings, by reason of promotion, or the like. Add to this,

two hundred dollars shown to be the funeral expenses, we have a total of $1,850.00. From this there should be deducted the reasonable expense of his keeping during the period of his minority, which would reduce to a considerable extent the amount named.

Yet the verdict was for $2,250.00, and is unquestionably excessive. The jury have doubtless failed to make any allowance for the care and keeping of the deceased during his minority.

The judgment is reversed and the cause is remanded. Hall, J., concurs ; Philips, P. J., not sitting.