ELIZABETH ROBERTS, Respondent, v. THE KAN-
SAS CITY RAILWAYS COMPANY, Appellant.

*Kansas City Court of Appeals, October 4, 1920.*

1. **NEGLIGENCE: Fellow Servants: Street Railways.** Plaintiff's husband was fatally injured while cleaning the interior of a Street Railway power house boiler. The boiler, within which the deceased was working at the time he was injured, was connacted with other boilers, then in operation, and another employee of defendant failed to close a shut-off valve and thereby blow-off steam was allowed to enter it, causing his injuries. *Held*, that a cause of action created by section 5434, Revised Statutes 1909, survives under section 5426 and that defendant was engaged in the work of operating a railroad within the meaning of section 5434, therefore a recovery was not barred upon the grounds that the deceased's death was caused by the negligence of a fellow servant.

2. ———: **Instructions: Defining Negligence.** Where the facts that the jury was required to find shows that the defendant was guilty of negligence as a matter of law, an instruction is not erroneous, because it fails to define the word, "negligently," which is used therein.

3. ———: ———: **Surplusage: Technical Words.** The use of technical words in an instruction, such as "non-delegable," is improper, but if an instruction, containing such words, would be good by requiring the jury to find all the necessary facts, they are surplusage, and not misleading to a jury.

(586)

4. ———: **Damages: Instructions: Pecuniary Loss.** An instruction, in an action for damages, by a widow for the wrongful death of her husband which fails to limit her recovery to her "necessary" pecuniary loss is not erroneous where it confines the pecuniary damages to those *directly* resulting to plaintiff, nor is it error to instruct the jury, in such a case, that they may "apply to such of these elements as you find from the evidence to exist, if any, that common knowledge and experience in life which men generally possess."

Appeal from Jackson County Circuit Court.—*Hon. Willard P. Hall*, Judge.

AFFIRMED.

*L. T. Dryden, E. E. Ball* and *R. J. Higgins* for appellant.

*Gamble, Kennard & Trusty* for respondent.

BLAND, J.—This is an action for the negligent killing of plaintiff's husband. Plaintiff recovered a verdict and judgment in the sum of $6500 and defendant has appealed.

The evidence shows that the deceased was employed as a boiler washer in defendant's power house located at 2nd Street and Grand Avenue, in Kansas City, Missouri. The boiler in which deceased was working at the time of his death was used to generate electricity in the operation of defendant's street railway. On the second floor where deceased was working there were a number of large boilers, numbered from 31 to 40. Deceased was working in the first, or boiler No. 31, of a battery of boilers numbered from 31 to 35. Each of these latter boilers had attached to it a "blow-off line" which ran downward and connected with another pipe, called the "main blow-off line," which was in turn connected by a pipe running downward to the "hot-well." Each blow-off line was connected to its boiler with valves. When these valves were closed the steam remained in the boiler but when a

valve was open the steam would rush out and down through the blow-off line into the main blow-off line, thence in the "hot-well" and then to the sewer. But if the steam were allowed to escape from a boiler for more than half a minute, it was likely to back up through the pipes to the other boilers and if one were empty and the proper valve open, steam would rush into it. These boilers were blown down at least once a day and often a greater number of times, for they were blown down each time the water in them got high.

Two or three days before deceased was injured boiler No. 31 "had been taken down," that is, emptied of water and steam, to be cleaned. Foreman Henderson and an employee named Baker opened up the valves connecting the boiler with its blow-off line. Henderson opened the super-heater valve. After the boiler had been emptied Baker closed two of the valves but he did not close the super-heater valve which had been opened by Henderson. The boiler washer foreman was one Duncan. It was his duty before sending men into a boiler to clean the same to see that the valves were all closed so that no steam could escape into the boiler. Duncan sent deceased and another man named Watts into the boiler without examining the super-heater valve to see that it was closed. His excuse for not doing so was that he assumed that it was closed because nobody had any business to open it "except when you come to put a boiler back on the line," that is, when it was again fired up and necessity arose for opening it to blow down the live boiler. No one but a foreman had any right to turn these valves, and no person was allowed on the floor except defendant's employees. Duncan ordered deceased and Watts to enter boiler No. 31 for the purpose of cleaning it. About one-half an hour before the accident they had removed the caps of the super-heater tubes which were in the top of the boiler. This made an open connection between the inside of the super-heater tubes and the rest of the boiler. After deceased and Watts had been in the super-heater cham-

ber about forty-five minutes Gunderson, the fireman on boiler No. 31, reported to his superior that he had high water in his boiler; Gunderson was then ordered by his superior to blow it down. Gunderson opened the blow-off valve and the angle valve and blew down the boiler. The boiler was carrying 185 pounds of steam. The valves were left open about two minutes. Five minutes later one of the boiler room employees heard deceased and Watts screaming and saw steam pouring out of the super-heater chamber into the boiler proper. Deceased was so badly scalded that he died afterwards. An investigation shortly after the accident showed that the super-heater valve on boiler No. 31 was wide open.

Plaintiff's cause of action was brought under section 5426, Revised Statutes 1909, and defendant contends that as deceased's death was caused by the negligence of a fellow servant there can be no recovery under said section. There is no longer any question but that a cause of action created by section 5434, Revised Statutes 1909, survives under section 5426, Revised Statutes 1909. [Hawkins v. Smith, 242 Mo. 688.] That defendant was engaged in the work of operating a railroad within the meaning of section 5434, Revised Statutes 1909, there can be no question. [Callahan v. Mer. Bridge Terminal Ry. Co., 170 Mo. 473; Austin v. Chi. R. I. & P. Ry. Co., 220 Fed. 85; Hellriegel v. Dunham, et al., 192 Mo. App. 43.]

Complaint is made of plaintiff's instruction No. 1, which reads as follows:

"The court instructs the jury that under the law a master owes to a servant a non-delegable duty to exercise reasonable care to furnish the servant a reasonably safe place to work and also to keep such place reasonably safe, so long as it is occupied by the servant in the due performance of the service to his master; and in this case you are instructed that if from the evidence you find that on September 14, 1917, in defendant's power house at or near Second Street and Grand

Avenue, in Kansas City, Missouri, plaintiff's husband, Ernest G. Roberts, was in the service of defendant, and that in the due performance of the duties of said service, he was inside of and engaged in cleaning or assisting to clean the super-heater of steam boiler No. 31, and that defendant, or any of its agents or servants, other than plaintiff's husband, carelessly and negligently caused or permitted the drain valve of said super-heater to be or remain opened, and that thereby steam from another of defendant's boilers entered and passed through said super-heater, and thereby scalded or burned him so that as the direct result thereof he died, then your verdict should be for the plaintiff."

It is insisted that the instruction is erroneous for the reason that the word "negligently" is not defined and that the instruction permitted recovery if *any* of defendant's servants permitted the valve to remain open instead of a servant who was acting within the scope of his employment. We think that it was not error in this case to fail to define the word "negligently" for the reason that defendant was guilty of negligence as a matter of law if the super-heater valve was permitted to remain open under the circumstances, and it was not necessary for the instruction to define negligence for the law itself declares that the act was negligent. [Haake v. Milling Co., 168 Mo. App. 177, 179.] In this case defendant was handling a dangerous agency, which if permitted to escape into the boiler, would probably scald to death anyone who might be therein. The uncontradicted evidence shows that it was the duty of Duncan to see that the valve was closed before ordering the boiler washers to enter the boiler for the purpose of cleaning the super-heater tubes. The evidence is likewise undisputed that Duncan failed to investigate to see if the super-heater valve was closed. We think under the circumstances reasonable minds would agree that the act of Duncan was negligent. Defendant was guilty of negligence, therefore, as a matter of law in permitting the valve to remain open under

the circumstances. The instruction was less favorable to plaintiff than she was entitled to. The uncontradicted evidence shows who left the valve open and whose duty it was to see that it was closed. There was no evidence or inference from the evidence that the valve was permitted to remain open by any servant other than one charged with the duty of looking after it and keeping it closed. For these reasons it was unnecessary to submit to the jury the question as to whether the servant who permitted the valve to remain open was acting within the scope of his employment.

Complaint is made that the instruction defined defendant's duty and described such duty as a "non-delegable" duty. The use in an instruction of a technical word such as "non-delegable" is improper. However, if the instruction had left out that part telling the jury generally the duty the master owes the servant, it would have been a good instruction, for the reason that had the jury found the facts detailed therein, plaintiff was entitled to recover even if the general duty the master owes the servant was not explained to them. The jury having been required to find certain facts before they could find for the plaintiff and those facts being all the facts necessary for them to find, the first part of the instruction defining what is the general duty of the master toward the servant was mere surplusage, and we are unable to see how the use of the word "non-delegable" could have misled the jury. From what we have said there is nothing in the other objections made to the instruction.

Complaint is made of plaintiff's instruction No. 3, which is as follows:

"If you find for the plaintiff, then you should assess her damages at a sum equal to all pecuniary loss, which you believe and find from the evidence directly resulted to her, if any, by the death of her husband, and in determining the amount of such damages, the law affords you no exact standard of measurement, but permits you to take into consideration the age of deceased,

the condition of his health, his life expectancy, his earnings and earning capacity, the number and ages of the minor children of the marriage between plaintiff and deceased, and whatever increased pecuniary burden, if any, for their support has by the death of deceased been cast upon plaintiff and apply to such of these elements as you find from the evidence to exist, if any, that common knowledge and experience in life which men generally possess, and express it in your verdict, in all however not exceeding the sum of ten thousand dollars.''

It is objected that the instruction fails to limit plaintiff's recovery to the ''necessary'' pecuniary loss and to the ''necessary'' increased pecuniary burden for the support of the minor children. Defendant relies upon the case of McGowan v. Ore & Steel Co., 109 Mo. 518, and Knight v. Lead & Zinc Co., 75 Mo. App. 541, (which is founded upon McGowan v. Ore & Steel Company). The McGowan case was overruled in the case of Browning v. Railway Co., 124 Mo. 55, Hays v. Hogan, 180 Mo. App. 237, 250. The instruction confines the pecuniary damages to those *directly* resulting to plaintiff. In the case of Powell v. Railroad, 255 Mo. 420, 452, the following instruction was approved—

''1. The court instructs the jury that if you find for plaintiff then you should assess her damages, if any, at such sum, if any, as you believe and find from the evidence to be a fair and just pecuniary compensation, only, for damages, if any, to her and her daughter, Marjorie Powell, occasioned by the death of Frederick Powell, not exceeding the sum of ten thousand dollars.''

The only instruction offered by defendant in the case at bar on the measure of damages told the jury that plaintiff could not recover for any distress of mind or grief which she may have suffered by reason of the death of her husband or for any loss to her of his society. This instruction was given.

Complaint is made that the use in the instruction of the words "and apply to such of these elements as you find from the evidence to exist, if any, that common knowledge and experience in life which men generally possess." It is insisted that the jury must decide the case according to the law and evidence and not base its verdict upon "that common knowledge and experience in life which men generally possess." It has been held that the nature of the loss sued for in a case like the one at bar is not susceptible of definite proof and that it is unnecessary that any witness should express an opinion of the amount of such pecuniary loss; that it is proper "for the jury to exercise their own judgment upon the facts and proof, by connecting them with their own knowledge and experience which they are supposed to possess in common with the generality of mankind." [Dalton v. Refining Co., 188 Mo. App. 529, 543; see, also, Hinton v. Chi. G. W. R. Co., 206 S. W. 396, 398; Spivach v. J. Hahn Bakery Co., 214 S. W. 166, 168.] As it has been often held that it is proper for the jury to exercise their judgment in accordance with the common knowledge and experience in life which men generally possess, and which the average jury is likewise supposed to possess, we see no harm in telling the jury in the instruction that they are to exercise such judgment and apply it to the facts in evidence.

Complaint is made that the instruction does not tell the jury that they might find such sum not exceeding ten thousand dollars as "they might deem fair and just," as provided for by section 5427, Revised Statutes 1909. If the jury followed the instruction and awarded plaintiff such pecuniary damages only as "directly" resulted to her, and they took into consideration the things set out in the instruction and applied to the evidence that common knowledge and experience in life that men generally possess in arriving at the proper amount, then they have found a verdict

204 M. A.—38

for the plaintiff that is fair and just within the meaning of such statute.

Complaint is made of the refusal by the court of defendant's instructions Nos. 2 to 8 inclusive, and instruction No. 10-a. Instruction No. 2, in the last line thereof, directs a verdict for the defendant and was therefore properly refused. Instructions Nos. 3, 4, and 8 tell the jury that plaintiff could not recover unless Duncan or someone at his instance opened the super-heater valve. The uncontradicted evidence showed that Henderson opened the valve and Duncan had nothing to do with the valve except that he failed to close it as he should have done. Instructions Nos. 5 and 6 told the jury that unless plaintiff showed that some employee whose duty it was to look after the valve opened the valve of boiler No. 31, plaintiff could not recover. There is no dispute in the evidence as to whose duty it was to open the valve, or that the person who opened it was acting within the scope of his employment. However, the case was submitted to the jury on the theory of Duncan's negligence in failing to see that it was not closed before ordering plaintiff's husband into the boiler, therefore, it was immaterial who opened the valve in the first place. The same vice is contained in defendant's instruction No. 7. Instruction No. 10-a told the jury that if deceased, Roberts, or Watts opened or caused to be opened the super-heater valve in boiler No. 31 plaintiff cannot recover. This instruction was amended by striking out the name of Watts. It was immaterial who opened it unless it was the deceased. Of course, if deceased opened it, he was guilty of contributory negligence.

The objection that the court erred in permitting witness Baker to state that when Henderson opened up the super-heater valve he said to witness, "Red, I opened up the super-heater valve," is not well taken, for the reason that the objection to the question was "I object to that question as incompetent, irrelevant and immaterial." Under the circumstances this was no objection. [Morton

v. S. W. Telegraph & Telephone Co., 217 S. W. 831, 836; Green v. Strother, 201 Mo. App. 418, 427, 428.]

It is next insisted that the court erred in permitting plaintiff to cross examine her witness Gunderson. The witness had apparently given a deposition in which he said that he blew down boiler No. 34. On the stand he said it was boiler No. 14. In his deposition he apparently had said steam could get from boiler No. 34 to boiler No. 31; on the stand he said that he did not know exactly how steam could get from boiler No. 34 to boiler No. 31. The court asked the witness how steam could get from boiler No. 34 to boiler No. 31 and he said he had not traced the pipe lines and could not say. Counsel for plaintiff then asked the witness, "I wish you would reflect now as to whether you don't have within your knowledge some fact by which you know that steam from boiler 34 could reach boiler 31." This was objected to on the ground that it was leading, argumentative and "an attempt to impeach his own witness." The witness was then asked "Don't you know, Mr. Gunderson, that you, in blowing down boiler 34, or boilers to the west of 31, have seen the steam squirt up around the valves of the boilers to the east of that." Counsel for defendant renewed his objection, which was overruled. The question was then asked by plaintiff's counsel, "Haven't you seen it?" Objection was again made and overruled. Witness answered, "Yes, sir." The witness testified that he was still in defendant's employ and that when he came to the trial that day he went up to the office of defendant's counsel. We fail to see any error in reference to the matter. There was no effort made to impeach the witness. There was no objection made that it was cross-examination. Under the circumstances the court did not abuse its discretion in permitting counsel to ask witness the leading questions.

The next assignment of error in the Points and Authorities is as follows:

"The court erred in permitting respondent's counsel to cross examine the witness Obermeyer as to certain

alleged statements made by him in what purported to be his deposition, which had been taken by respondent.''.

In that part of the brief containing appellant's argument we find complaint is made that the court allowed plaintiff to use an unsigned deposition of the witness Obermeyer for the purpose of impeachment. There is no assignment of error in the Points and Authorities in reference to the court allowing plaintiff to impeach the witness by the deposition. For that reason we cannot under our rules consider the point raised.

It is insisted that the court erred in permitting the reading of the deposition of plaintiff's witness Baker, for the reason that plaintiff ''had produced the witness in court and placed him on the stand as a witness in the case.'' We fail to find where plaintiff placed the witness on the stand. The deposition showed that he lived in the State of Kansas and we assume that he was not in the court room at the time or the court could not have permitted the deposition to be read. There was no objection to the deposition being read on the ground that the witness was present. The witness was afterwards put on the stand on the part of the defendant. There is nothing in the record to indicate that he was present at the time his deposition was read.

. The judgment is affirmed. All concur.