GLENN BREWER and ELLA C. BREWER, Appellants, v. I. L. ROWE, Respondent, No. 42815—252 S. W. (2d) 372.

Court en Banc, November 10, 1952.

*Harold F. Hecker, Jenny & Cole* and *Seiler, Blanchard & Van Fleet* for appellants.

594

*Moser, Marsalek, Carpenter, Cleary & Carter, Julian C. Jaeckel* and *Russell J. Horsefield* for respondent; *Joseph Nessenfeld* of counsel.

596

█ PER CURIAM:—The following portion of an opinion prepared by one of the commissioners is adopted as a part of this per curiam opinion:

"Plaintiffs sued for damages for the death of their son, allegedly caused by defendant's negligence. RSMo. 1949, Sec. 537.080, V.A.M.S. Defendant denied negligence, alleged contributory negligence and counterclaimed. Plaintiffs had a verdict and judgment for $15,000 and against defendant on his counterclaim. Defendant was granted a new trial on the ground that plaintiffs' Instruction No. 6 was erroneous. Plaintiffs appealed.

"Larry K. Brewer, plaintiff's son, was buried on his eleventh birthday. He was a normal boy. He had just graduated from the fifth grade. He made excellent grades in school, being one of the three or four 'top' members in a class of between thirty-five and forty. He was in good health, was physically strong, was an excellent swimmer and tennis player and was active in other sports. He played a violin in the school orchestra. He was likeable and made friends rapidly. He was a church member and attended church and Sunday School regularly. He was a Cub Scout. He was mechanically inclined. He earned money by cutting lawns and running errands for the neighbors. At the time of his death, his billfold contained about $3 which he had earned.

"Larry died within an hour after sustaining injuries in a collision between the parties' automobiles. The collision occurred about 12:30, p.m., June 2, 1950, on U. S. Route 66, about 1½ miles west of Bourbon, Missouri. Defendant was driving west. Mrs. Brewer was driving east, and Larry was sitting beside her in the front seat. There was a 'drizzling rain'. The pavement, hard-surfaced with marked centerline, was wet. According to plaintiffs'

evidence, the site was a sharp, unbanked curve (to Mrs. Brewer's left and to defendant's right) and the collision occurred on the east end of the curve. Mrs. Brewer so testified. So did plaintiffs' witness Tindell, who was driving a truck westwardly and saw the collision immediately before he reached the east end of the curve.

"Mrs. Brewer first noticed defendant's car when it was about 200 feet distant; it was on 'its own side' and she observed nothing unusual about its movements; it was going faster than she was (apparently she was going about 30 m.p.h) but she did not know how much faster; then, as she was nearing the end of the curve, she noticed that defendant 'was drifting to my side of the road'; she put on her brakes 'with all my strength' and felt the right rear wheel go off the right edge of the pavement and onto the shoulder; at that time, defendant's car was two or three car lengths away and 'it was coming towards me, but it tried to get over on the other [defendant's right] side of the road', and 'he hit the front side of my car, the front right'; the collision was 'way over' on her side; her right rear wheel was still off the pavement; at the time of the impact, no part of her car was left of the centerline— it was 'just sort of on an angle'—and she had almost stopped.

"Defendant's evidence was that the collision occurred on the 'straight highway' east of the curve and on his side of the highway. Defendant testified that: he was driving 40 to 45 m.p.h.; he first saw the Brewer car when it was about a half mile away (100 feet, in his deposition), but paid no particular attention to it until he noticed that its right wheels were off the pavement and 'throwing water and mud'; then the other car 'was coming at me broadside * * * it had turned around in some manner, flipped around; I just happened to see it coming toward the [374] front of my automobile; there was no time to put on brakes or anything else, and I immediately pulled my car to the right, my right, towards the north shoulder'; to the best of his knowledge, he never crossed the centerline; and the other car was on his side of the road when it stopped.

"Plaintiffs' Instruction No. 6 (for the giving of which the trial court granted a new trial) was: 'The court instructs the jury that if you find and believe from the evidence that on the occasion mentioned in evidence plaintiff Ella C. Brewer was driving an automobile eastwardly over and along Highway 66 in Crawford County, Missouri, and that defendant I. L. Rowe was operating an automobile westwardly over and along said highway, and that the automobile being driven by plaintiff Ella C. Brewer and the automobile being driven by defendant I. L. Rowe collided; and that at the time of and immediately prior to said collision, if such you find there was, defendant I. L. Rowe negligently drove and operated the automobile *which he was at that time driving* around a curve in said highway at an excessive, high and dangerous rate of speed

under the circumstances then and there existing, and that said negligence of the said I. L. Rowe, if you find he was so negligent, directly contributed to cause the collision mentioned in evidence and his injury and damage, if any, then, if you so find, defendant I. L. Rowe is not entitled to recover of plaintiffs on his counterclaim and your verdict will be in favor of plaintiffs and against defendant I. L. Rowe on his counterclaim.'

"We do not agree that the instruction assumes that defendant 'was driving his car around a curve instead of requiring a finding by the jury on that issue.' The reasonable construction is that the instruction requires a finding that 'defendant negligently drove and operated his automobile around a curve in said highway at an excessive, high and dangerous rate of speed under the circumstances then and there existing.' The clause which we have italicized assumes only the undisputed fact that defendant was driving his car—not that he was driving it on a curve. Contrast Hengelsburg v. Cushing, Mo.App., 51 S.W. 2d 187, cited by defendant, wherein the instruction clearly assumed the automobile's position on the highway.

"Defendant next contends that Instruction No. 6 was erroneous in that it failed to hypothesize facts as to 'excessive, high and dangerous rate of speed * * * under the circumstances,' citing Yates v. Manchester, 358. Mo. 894, 217 S.W. 2d 541, and other cases. Defendant also asserts that Instruction No. 1 is reversibly erroneous in that it submitted excessive speed as a predicate to liability in the same language as Instruction No. 6. Plaintiffs counter thus: Any error in Instruction No. 6 was harmless as the verdict was obviously returned under Instruction No. 1, the only instruction authorizing a plaintiffs' verdict on both their claim and defendant's counterclaim.

"In this case there was no material conflict in the evidence concerning the speed of defendant's automobile nor as to the circumstances under which it was being operated, but the evidence was conflicting as to whether the collision occurred on the 'straight highway' or on a curve and as to whether it occurred on Mrs. Brewer's side of the highway or on defendant's side. In view of the evidence, defendant contends, excessive speed could not have been a proximate cause of the collision and that there was no submissible issue of negligent speed.

"Instruction No. 1 submitted defendant's failure to observe plaintiffs' car *and* his failure to keep to the right side (and driving on the left side) of the highway, *and* his operation of his car at a high and dangerous rate of speed under the circumstances then and there existing, and 'that by reason of *all* the foregoing', etc. Clearly, this submission was in the conjunctive. Since there was a conjunctive submission [375] of speed and failure to keep to the right side

(and driving on the left side) of the highway, the fact that the submission as to speed may have been improper (which we do not rule) is not ground for a new trial. Corley v. Kroger Grocery & Baking Co., 355 Mo. 4, 193 S.W. 2d 897, 900. We rule that Instruction No. 1 was not erroneous.

"Instruction No. 6 did not authorize a plaintiffs' verdict on their claim. And it authorized a plaintiffs' verdict on defendant's counterclaim only if defendant was contributorily negligent in operating his car 'around a curve in said highway at an excessive, high and dangerous rate of speed under the circumstances then and there existing.' Other plaintiffs' instructions similarly authorized a plaintiffs' verdict on defendant's counterclaim if defendant was contributorily negligent in failing to keep to the right and in driving on the left side of the highway. But Instruction No. 1 (the only instruction authorizing a verdict for plaintiffs, both on their claim and defendant's counterclaim) required the jury to find that defendant was negligent in respects additional to operating at excessive speed, viz., failure to observe plaintiffs' car and failure to keep to the right. Thus, the jury found that these other acts or omissions constituted primary negligence as to plaintiffs' claim and contributory negligence as to defendant's counterclaim. The findings the jury were required to make under Instruction No. 1 necessarily precluded them from finding for defendant on his counterclaim under Instruction No. 6. In other words, the jury's finding that *all* of defendant's acts or omissions as submitted in Instruction No. 1 were negligent, constituted a finding of defendant's contributory negligence on his counterclaim as to these same acts or omissions conjunctively submitted in Instruction No. 1. See Hoefel v. Hammel, Mo.App., 228 S. W. 2d 402, 405. Hence, any error in Instruction No. 6 was harmless.

"Such conclusion renders unnecessary a determination of whether plaintiffs made a submissible case as to defendant's excessive speed.

"Defendant further contends that Instruction No. 6 inferentially authorized a verdict against defendant on plaintiffs' cause of action because of plaintiffs' instruction placing upon defendant the burden of proof as to his counterclaim. See Kunz v. Munzlinger, Mo.Sup., 242 S.W. 2d 536, 540. Instruction No. 6 authorized a verdict against defendant only on his counterclaim and did not purport to authorize a verdict against him on plaintiffs' claim. We overrule this assignment.

"In the first paragraph of Instruction No. 4, the jury was authorized to assess plaintiffs' damages 'at such sum * * * as will fairly and reasonably compensate plaintiffs for the necessary pecuniary injury, if any, to them by reason of the loss of their said child * * *.' Defendant does not complain of the first paragraph. 'Instructions

(on the measure of damages under the compensatory sections of the wrongful death statutes) have been approved which have neither limited or detailed the elements of damages, nor directed the jury in the manner of estimating the damages further than to limit the plaintiff's recovery to the *fair and just compensation for the pecuniary loss* which has or would be sustained as a necessary result of the wrongful death.' Hertz v. McDowell, 358 Mo. 383, 214 S.W. 2d 546, 549.

"In the second paragraph of Instruction No. 4, the jury was told that 'in determining the amount of such necessary pecuniary injury, if any, the law does not afford you an exact standard of measurement more accurate than that given above, but it does permit you to take into consideration your common knowledge and experience in life in connection with all the evidence relating to such injury, if any.' 'It has repeatedly been held by the courts in this state, that the nature of the loss of a minor child is such, that it is [376] proper "for the jury to exercise their own judgment upon the facts and proof, by connecting them with their own knowledge and experience which they are supposed to possess in common with the generality of mankind." Roberts v. Kansas City Rys. Co., 204 Mo. App. 586, 228 S.W. 902, 905.' Miller v. Hotel Savoy Co., 228 Mo. App. 463, 68 S.W. 2d 929, 932. However, defendant says that the second paragraph 'constituted positive misdirection' in that "the law does afford a standard of measurement more accurate than that given in the first paragraph.' (On measure and elements of damages for wrongful death of a minor child, see Mennemeyer v. Hart, 359 Mo. 423, 221 S.W. 2d 960; Spalding v. Robertson, 357 Mo. 37, 206 S.W. 2d 517, 523; Anno., 14 A.L.R. 2d 485.)

"But defendant offered no instructions supplementary to or explanatory of Instruction No. 4. 'It seems that, when the measure of damages is submitted generally but in effect according to the standard fixed by the statute, the defendant should request if he desires instructions further limiting or detailing the elements of plaintiff's damages or directing the jury how to estimate them.' Hertz v. McDowell, 358 Mo. 383, 214 S.W. 2d 546, 549. And see Hancock v. Kansas City Terminal Ry. Co., 339 Mo. 1237, 100 S.W. 2d 570, 574; Golden v. National Utilities Co., 356 Mo. 84, 201 S.W. 2d 292, 298. This assignment is ruled adversely to defendant.

"One assignment in defendant's new trial motion was that the verdict was procured by and was the direct result of 'fraud perpetrated upon the court and jury by the false testimony of witness Tindell.' On cross-examination, Tindell stated that one of plaintiffs' attorneys, Robert Seiler, Joplin, had never represented him in any case. In support of his new trial motion, defendant filed affidavits showing that Seiler had signed an answer for Tindell in a certain suit. Plaintiffs' uncontradicted counter affidavits (those of Seiler and two

other attorneys, Herbert Douglas, Neosho, and Max Patton, Joplin) were that: in a Seiler-Tindell conversation in January, 1951, regarding the instant case, Tindell showed Seiler the summons in a case in which he was defendant; Seiler agreed to file an answer to avoid default; Seiler so informed Douglas, attorney for plaintiff in that case, and Patton, whom Tindell later employed; Seiler never again discussed that case with Tindell and received no fee for filing the answer; Patton agreed to and did have Seiler's name stricken as Tindell's attorney; and the case was finally disposed of a month before the instant trial by Douglas and Patton.

"Tindell's testimony as to the site of the collision and the place of impact was corroborated by Mrs. Brewer. Assuming that Tindell's statement (that Seiler had never represented him) was *knowingly* false, it does not follow that the verdict resulted from 'fraud perpetrated on the court and jury by the false testimony' of Tindell. Such must have been the trial court's view when it overruled that assignment in defendant's new trial motion. We hold that such action was proper.

■ "Defendant says the verdict was 'so excessive as to evince passion and prejudice on the part of the jury.' Even if excessive, the amount of an award does not, in and of itself, show passion and prejudice. O'Brien v. Louisville & Nashville R. Co., 360 Mo. 229, 227 S.W. 2d 690, 693."

Aside from regard to mitigating or aggravating circumstances, the basis of recovery for the wrongful death of a child is the value of the child's services to the parents during the child's minority. Mennemeyer v. Hart, 359 Mo. 423, 221 S.W. 2d 960, 962. Section 537.090, RSMo. 1949, V.A.M.S., expressly states: "* * * the jury may give such damages, not exceeding fifteen thousand dollars, as they may deem fair and just, * * *."

■ The facts and circumstances shown by the evidence in a particular case of this character may establish that the amount of damages awarded by the jury is either grossly excessive or grossly inadequate; and in such a situation it would be the duty of the court to order a conditional remittitur or grant a new trial, as the case may be.

To illustrate, let us assume two extreme cases:

(1) An infant, of any age, is shown by the evidence to have been so defective, mentally or physically, as to establish that he could never have an earning capacity or render service to his parents: then, clearly, in the absence of aggravating circumstances, a verdict for his wrongful death for $15,000 would be excessive.

(2) An infant prodigy is shown to have been earning vast sums and, in all reasonable probability, would have continued to do so for an appreciable number of years before attaining majority: then, clear-

ly, in the absence of mitigating circumstances, a nominal verdict for his wrongful death would be insufficient.

On the other hand, in many cases, as in this case and perhaps most of them, the wrongful death of a normal infant, aged, say, fourteen years or less, and who had developed no special aptitude, is shown: obviously, the verdict in such case is, must be, based upon speculation and nothing more. There can be no substantial evidence as to the probable net value of his future service to his parents. In such a case, we deem it to be the expressed intent of the Legislature that the jury, not the trial or appellate court, fix the amount of the award "as they may deem fair and just". And, too, we think the jury is more able and likely to arrive at a fair and just award than the reviewing court. This, for the reason that the jury in most cases sees the parents and learns something of their station in life and the surrounding circumstances under which the child lived and was being reared.

Furthermore, should we reduce the amount of the award in this case, we could not thereafter consistently permit to stand any verdict for an amount greater than that here fixed for the death of an infant of the approximate age of this decedent. and under similar circumstances. Such an order would amount to reducing by judicial fiat the statutory maximum of $15,000 to the amount fixed in this case for the death of such an infant under similar circumstances. This the court is unwilling to do.

The cause is reversed and remanded with instructions to set aside the order granting a new trial and to reinstate the verdict and judgment rendered in accordance therewith.

*Hollingsworth, Leedy, Tipton* and *Conkling, JJ.,* concur; *Hyde, J.,* concurs in result; *Dalton, J.,* concurs in result in separate opinion filed; and *Ellison, C.J.,* concurs in separate concurring opinion of *Dalton, J.*

DALTON, J. (concurring).—I concur in the result reached in the per curiam opinion, but feel that additional facts should be stated and that prior decisions should be reviewed.

The evidence concerning the age, character and the physical and mental development of the child has been fully reviewed in the opinion. Defendant offered no evidence on the issue of pecuniary loss and did not cross-examine either plaintiff with reference to the reasonable cost of the child's education, support and maintenance. By cross-examination defendant did show that the child suffered from an allergy—chronic hay fever during the summers—and that his parents had expended funds for treatment and had taken him to Traverse City, Michigan, where they purchased a cottage in which to stay until the hay fever season was over. As to matters which may affect the amount of recovery for the death of a child see Spalding v. Robert-

son, 357 Mo. 37, 206 S.W. (2d) 517, 523; Oliver v. Morgan (Mo. Sup.), 73 S.W. (2d) 993, 997; Marx v. Parks (Mo. App.), 39 S.W. (2d) 570, 575.

 The form of the instruction submitting the issue of damages has been reviewed in the opinion and reference has been made to the fact the defendant requested no instructions supplementary to or explanatory of Instruction 4. No cautionary instruction on this issue was requested or given. See Montgomery v. Ross (Mo. Sup.), 218 S.W. (2d) 99, 103. No issue was sought to be submitted with "regard to the mitigating and aggravating circumstances attending such wrongful act, neglect or default." Sec. 537.090, supra; Spalding v. Robertson, supra (206 S.W. (2d) 517, 521). It was under such circumstances that the jury returned a verdict for $15,000. That verdict has, in effect, been approved by the trial court, since a new trial was granted solely for alleged error in giving Instruction 6, and the assignments in the motion for new trial with reference to an excessive verdict were overruled.

Appellant now contends that "it is quite apparent the verdict was far in excess of what can be said 'will fairly and reasonably compensate plaintiffs for the necessary pecuniary injury' sustained by them as a result of the death of their son"; and that "the verdict was so excessive as to evince passion and prejudice on the part of the jury."

On this issue we adopt as a part of this concurring opinion that part of the commissioner's opinion, supra, which reviewed the applicable authorities and made certain observations as follows: "But is the instant award for the wrongful death of an 11 year old boy excessive because it was for $15,000, the statutory maximum allowable? RSMo 1949, Sec. 537.090, VAMS. The appellate courts in this state have never held that an award in the maximum amount is excessive solely because it was the maximum allowable. Two decisions of this court intimate that the maximum amount is excessive in instances of children of tender years. In Davoren v. Kansas City, 308 Mo. 513, 273 SW 401, 40 ALR 473, this court, en banc, required a remittitur of $5,000, one-half of the then statutory maximum, in the case of a 6 year old boy. The only reason assigned was, '(under previous rulings).' Apparently the reference was to Hornbuckle v. McCarty, 295 Mo. 162, 243 S.W. 327, 25 ALR 1508, wherein Division No. 1 (in 1922) deemed a $10,000 award excessive by $5,000 in the case of a 7 year old boy. That decision appears to have been based upon the theory that the child's earning capacity until he reached 14 would have been 'negligible' and that his earnings, between 14 and 21, could not have exceeded $5,000. We do not regard those decisions as authority for the proposition that an award of the maximum for the death of a child under 14 is, ipso facto, excessive, or that such an award must be reduced by the appellate court. Twenty-two years after the decision in the Davoren case, this division held that, under

the $10,000 limitation, an $8695 award for the death of a 9 year old boy was not excessive. Wright v. Osborn, 356 Mo. 382, 201 S.W. 2d 935.

"In instances of wrongful death of an adult, the award for pecuniary loss must be 'justified by the evidence.' Hertz v. McDowell, 358 Mo. 383, 214 S.W. 2d 546, 551. But: 'An estimate of the value of the prospective services of a child, too young to have developed any particular talents or aptitudes, can be reached only on considerations of the most general character. In such case, much must be left to the common sense of the jury.' Hornbuckle v. McCarty, 295 Mo. 162, 243 SW 327, 330, 25 ALR 1508. 'It has been held that because of the impossibility of presenting specific proof upon every element of damage in a case of this character that the statute invests the jury with a large measure of discretion in determining the loss suffered by a parent through the death of a minor child.' McFetridge v. Kurn (Mo. App.), 125 SW 2d 912, 919. (And see Grogan v. The Broadway Foundry Company, 87 Mo. 321, 326).

"In 10 West's Mo. Digest (including the 1951 Pocket Part), Death, Key No. 99(3), are numerous wrongful-death-of-minors cases involving remittitur by trial and appellate courts. In only eleven was remittitur required. Two [379] of these, Davoren v. Kansas City and Hornbuckle v. McCarty, supra, have already been discussed. In all the others, the minor had been contributing to its parent's or parents' support; and remittitur was ordered because *under the evidence* the amount of the award (after deducting cost of support and, in some instances, medical and funeral expenses) clearly would have exceeded the minor's estimated contributions during the time the parents would have been entitled to its services.[1]

"The statute fixes a maximum award in all wrongful death cases, and this limitation applies even though the *evidence* in a particular case might show a pecuniary injury in excess of the maximum. As we have pointed out, our appellate courts have not hesitated to order remittitur where the affirmative evidence failed to support the award made for the pecuniary injury. But, in instances of young children, the difficulty of direct proof requires that determination of pecuniary injury be left in a large measure to the jury's common sense; and, of necessity, the jury's award must be based, not upon direct, positive *evidence*, but upon probabilities which the jury might reasonably find

---

[1] McFetridge v. Kurn (Mo. Sup.) 125 SW 2d 912 (14 mos.); Marx v. Parks (Mo. App.) 39 SW 2d 570 (3 yrs., 8 mos.); Walker v. Missouri Pac. R. Co. (Mo. App.) 253 SW 804 (3 yrs.); Buchholz v. Standard Oil Co. of Indiana, 211 Mo. App. 397, 244 SW 973 (5 yrs.); Dugdale v. St. Joseph Ry., L.H.&P. Co., 195 Mo. App. 243, 189 SW 830 (12 yrs., 10½ mos.) Barnes v. Columbia Lead Co., 107 Mo. App. 608, 82 SW 203 (2 yrs., 7½ mos.); Hickman v. Mo. Pac. Ry Co., 22 Mo. App. 344 (18 yrs., 3 mos.); Parsons v. Mo. Pac. Ry. Co., 94 Mo. 286, 6 SW 464 (18 yrs., 4 mos.); Kelly v. City of Higginsville, 185 Mo. App. 55, 171 SW 966 (17½ yrs.).

exist, considering the child's age, condition, health, mentality, personality and perspective, and the parents' ages, attitude and circumstances.

"No jury could predict, with certainty, the probabilities as to Larry Brewer's future, nor precisely fix plaintiffs' pecuniary loss. But the jury, even without specific evidence thereof, could have reasonably concluded that the parents' ages and health were such that the life expectancy of both parents extended beyond the time Larry would have attained his majority. The jury could also have reasonably concluded that, in all reasonable probability, plaintiffs sustained a substantial pecuniary injury by reason of Larry's death."

Further, pecuniary loss could be inferred from Larry's death and his relationship to the plaintiffs. In Sharp v. National Biscuit Co., 179 Mo. 553, 561, 78 S.W. 787, the contention was made "that there was no proof of the earning capacity of the child nor the ages of the parents" and the court said the cases "hold that proof of that character is unnecessary, that it would be mere matter of opinion, and that the jury would have to fix the amount anyway." And see Franke v. The City of St. Louis, 110 Mo. 516, 527, 19 S.W. 938; McCullough v. W. H. Powell Lmbr. Co., 205 Mo. App. 15, 216 S.W. 803, 807; Williams v. Hines (Mo. App.), 229 S.W. 414, 416; Dalton v. St. Louis Smelting & Refining Co., 188 Mo. App. 529, 174 S.W. 468, 470 (2).

In this case the record affirmatively shows medical, ambulance and funeral bills in the sum of $816.00 incurred by plaintiffs on account of the death of their son. Such expenses could be considered as part of "the necessary injury resulting from such death." See Missouri cases cited in Anno. 14 A.L.R. (2d) 485, 536. Plaintiffs sustained their burden of proof on the issue of damages.

It was for the jury in the first instance to fix the amount of plaintiffs' damages and the verdict has, in effect, been approved by the trial court. On the record presented in this case there is no sound legal basis on which this court can say the verdict is excessive or that it is not sustained by the evidence. There is no substantial evidence in the record binding upon plaintiffs [380] which would require a remittitur. The amount is within the limits fixed by the legislature and, under the circumstances of this record, does not show passion or prejudice.

In this situation, we approve the statement in Wright v. Osborn, 356 Mo. 382, 201 S.W. (2d) 935, 940 in saying: "No formula exists by which it may be determined whether a jury award of damages is excessive under the instant circumstances. Courts determine this character of question in each case upon its own facts, due consideration being given to uniformity of decision, economic conditions, expressed legislative policy and all pertinent factors. The test we must

finally meet, however, is whether the size of the verdict is such as to shock the conscience of the court, or whether it is within the bounds of reason.''

As stated, I concur in the result reached in the per curiam opinion. *Ellison, C.J.*, concurs.