GERTRUDE EASTERLY, Plaintiff-Respondent, v. AMERICAN INSTITUTE OF STEEL CONSTRUCTION, a Corporation, and L. H. DODD, Defendants-Appellants.—162 S. W. (2d) 825.

Division Two, May 5, 1942.

Rehearing Denied, June 17, 1942.

*Moser, Marsalek & Dearing* for appellants.

*Cox, Blair, Kooreman & Wallach* and *Scott Peters* for respondent.

ELLISON, J.—This case comes to the writer on reassignment. Eleven of the jurors returned a verdict for plaintiff-respondent against both defendants-appellants in the sum of $35,000, damages for personal injuries sustained in a collision between their respective automobiles. The trial court enforced a remittitur of $10,000 and entered judgment for $25,000, this judgment postdating the verdict nearly fourteen months and thus discounting the interest thereon over $1600. Both appellants assign error in respondent's Instruction No. 1, and complain that the judgment is still excessive. Appellant Dodd was an employee of the appellant American Steel Institute. Respondent was riding with her husband. The collision occurred a few miles west of Drake, Missouri, in daylight, on U. S. Highway No. 50, which is of concrete slab between 18 and 20 feet wide, with a black traffic stripe in the middle.

Respondent was traveling east and the appellants west. At that point the highway ascends a long hill from the west, makes a curve to the south and levels off somewhat. Respondent's automobile had about reached that curve, and, according to the testimony for her, had been at all times on the right or south side of the highway. She and her husband first saw appellants' automobile when it was 75 to 100 feet away and on the left side of the highway. The hill prevented them from seeing it sooner. It was traveling about sixty miles per hour; respondent's automobile, 35-40 miles per hour. Respond-

ent's husband honked his horn, pressed the brake pedal and tried to turn further to the right, but a violent collision, almost head-on, followed immediately on appellants' left side of the road. Appellant Dodd testified he was coasting down the hill about 35 miles per hour and was on his right side of the pavement. He had seen respondent's automobile from a long distance away but paid no particular attention to it until it was 35-40 feet from him. He noticed it was three or four inches over the traffic stripe, on his side of the pavement. He sounded his horn but respondent's husband violently turned to the left, the collision resulting.

Obviously this evidence presented issues of fact for the jury. Appellants do not deny that; but they say respondent's main instruction was erroneous under the particular facts of the case. No authorities are cited in support of the contention except Sec. 8385(c), R. S. 1939, sec. 7777(c), p. 5213, Mo. Stat. Ann., which provides that "an operator or driver meeting another vehicle coming from the opposite direction on the same highway shall turn to the right of the center of the highway so as to pass without interference."

The instruction first hypothesizes the facts that respondent's automobile was traveling eastwardly on the right side of the highway; and that appellants' automobile was traveling westwardly and rounding a curve without keeping to the right as far as was reasonably possible, and with the left side of the automobile to the left of the center line. Next it requires a finding that when the two automobiles were meeting each other appellants' automobile failed to turn to the right of the center line so as to pass without interference. Then it advises the jury that said failures to keep to the right while rounding the curve, and to turn to the right when meeting respondent's automobile (if found) constituted negligence; and if they further found such negligence directly and proximately caused the collision and plaintiff's injuries; and that plaintiff at all such times was exercising ordinary care (she was a guest, not the driver); their verdict should be for plaintiff against both defendants.

The fault found with the instruction is that it declares appellants' failure to keep and turn to the right constituted negligence as a matter of law, without regard to the position and movement of respondent's automobile when the two vehicles were meeting. Appellants assert the instruction permitted a verdict for plaintiff even though the jury may have believed respondent's automobile was turned to the left by her husband just before the collision. There is no merit in this assignment. The import of the instruction as a whole was that respondent's automobile was on the right side of the highway, and kept there; and that appellants' automobile was on the left side of the highway and failed to turn out. It hypothesizes appellants' failure to turn to the *right of the center line, so as to pass without*

*interference.* This clearly implied respondent's automobile was not on that side of the highway.

That was what the evidence in her behalf showed. She was not required to hypothesize more in her instructions, since appellants submitted no affirmative defense to the jury. [Bebout v. Kurn, 348 Mo. 501, 154 S. W. (2d) 120, 127(9).]. Appellants pleaded and submitted the negligence of respondent's husband in driving the automobile in which she was riding as the *sole* cause of the collision and injury, but that was not an affirmative defense, and could have been shown under a general denial. [Geisendorf v. Brashear Truck Co. (Mo. App.), 54 S. W. (2d) 72, 73(1).] They also *pleaded* respondent's contributory negligence in failing to discover appellants' approaching automobile, warn her husband, and prevent him from driving on the left side of the road; but those issues were abandoned and not submitted. However, respondent's Instruction No. 1, here under discussion, required the jury to find she was free from negligence. We find no error in the instruction.

■ The only other question in the case is whether the judgment for $25,000 is excessive, considering the nature of respondent's injuries. Respondent says first that an inquiry by us into that question is foreclosed, because it was never submitted to the trial court. Her theory is that after appellants filed their motion for new trial assigning the $35,000 *verdict* was excessive, the trial court enforced a remittitur down to $25,000, as of a date fourteen months later than the verdict, thereby remitting $10,000 and discounting about $1,600 interest; and that appellants did not attack the new monetary award. However, the record shows the order overruling the motion for new trial was conditioned on compliance with the remittitur; and that respondent saved her exceptions to the overruling of the motion for new trial. Respondent's contention is at war with Melenson v. Howell, 344 Mo. 1137, 1141(1), 130 S. W. (2d) 555, 557(1-8), which is followed in Lee's Summit B. & L. Assn. v. Cross, 345 Mo. 501, 507, 134 S. W. (2d) 19, 22(2-7). But she says the point urged now was not raised or considered in that case, and that the ruling there was an inadvertence, so far as it was applied to excessiveness of damages.

We do not think so. The assignment made in the Melenson case was that the appeal there stood as if *no* motion for new trial had been filed—because the motion which was filed went to the first judgment entered in conformity with the verdict, and not to the second judgment after a remittitur; and that no second motion for new trial was thereafter filed. Division 1 overruled this contention, holding the chief office of a motion for new trial is to prevent the entry of a judgment; that it is directed against the *verdict,* not the judgment; that only one motion for new trial ■ is necessary; and that under our practice the motion also serves to preserve matters of exception for appellate review. Indeed, the decision holds a second motion for

new trial filed more than the statutory four days after verdict, amounts only to a *suggestion,* and authorizes nothing more than the trial court could do without it. When the original motion charges that the verdict was excessive; the court overrules the motion on condition that a specified amount be remitted; and the defendant excepts; we think the way is still open for him to complain on appeal that the reduction was insufficient.

In the instant case the respondent was a housewife 51 years old. Her injuries were factures of the nose, left jaw, second, third and fourth ribs, and of both bones of the right leg below the knee. The nose injury was a small depression fracture, resulting in a warping of the septum, or partition between the nostrils which interfered with breathing. This was a permanent effect causing excessive secretions on the obstructed side, which was aggravated by interference with nature's cleaning out processes, thereby causing a "vicious circle." There was also a deep cut or puncture in the flesh of the nose and lip with resultant disfiguring scars and numbness of the lip. All these conditions except the numbness could be corrected only by rather extensive plastic surgery. The fracture of the jaw bone was clear through. The jaw had healed but was sore and the lip and part of the face still numb at the time of the trial, some fourteen months after the casualty, so respondent could not tell when food would run over her lip. She had had some sinus trouble and some nervousness before the casualty.

The three broken ribs had healed at the time of trial but she still had some discomfort in her chest though it did not handicap her greatly. The leg fractures were extensive. In the tibia, or large bone below the knee, there was a separated piece. The fracture started about midway between the knee and ankle, and there was a shattering almost to the ankle joint. The fibula was broken across diagonally and rather shattered about three inches below the knee. These fractures were reduced only with difficulty by splints. Surgery was impossible or unsafe with this and the other painful injuries because of shock and the fact that respondent's lung was collapsed in the casualty, which prevented the use of a general anaesthetic. She was in a precarious condition. A very fair result was obtained, but the fractured leg is an inch shorter and an inch larger than the other one, which will in time probably result in a tilting of the pelvis. The ankle joint still had little freedom of motion at the time of the trial; and the circulation in that leg was rather bad.

The inability to use an anaesthetic of course meant severe pain accompanied the treatment of these various fractures; and the net result of the whole was "a generalized increased nerve inability of the organism as a whole." Respondent is "very jumpy, very fidgety." She was in St. Mary's Hospital at Jefferson City for eight weeks. She was taken by ambulance to the railroad station and thence by

train to Dupo, where she remained in her sister's home for four weeks. It took her a month to learn to use crutches, and she had been using them for about thirteen months before the trial. Under the evidence for respondent, she is unable to perform her duties as a housewife; she has suffered great pain, discomfort and disfiguration. Her mental and nervous processes and reactions have been slowed up some.

Respondent has not cited cases where like judgments were sustained under approximately similar circumstances. She stands on the proposition that the trial court and jury were in a better position to evaluate her damages. Appellants have referred us to ten decisions[1] where judgments ▬▬▬ were cut to a figure substantially below the amount here. We have exercised the right to reduce verdicts and judgments, though unwilling to reverse and remand on the ground that the verdict was the result of passion and prejudice, ever since the decision in 1910 of Cook v. Globe Printing Co., 227 Mo. 471, 542-7, 127 S. W. 332, 333. In Mills v. Ill. Cent. Rd. Co. (No. 272, Mch. 30, 1942), 62 Sup. Ct. 827, recently decided by the United States Supreme Court, Mr. Justice JACKSON held in a separate concurring opinion that Congress may have intended to permit the plaintiff in a suit under the Federal Employers' Liability Act to ''go shopping for a judge or a jury'' in a more favorable forum, because he usually has to pay his lawyer on a contingent fee basis. The opinion was not controlling in the case in which it was delivered; nor has it any application here. But it justifies the observation that under our practice we cannot inquire or consider whether damage verdicts in St. Louis should be permitted to stand at a larger amount than elsewhere in the State. The guiding consideration with us in ordering conditional remittiturs of damages is whether the recovery was fair and reasonable in view of the facts most favorable to plaintiff, taking into consideration the amounts upheld in other cases *from over the whole State* and even elsewhere, for similar injuries. [Morris v. E. I. Dupont De Nemours & Co., 346 Mo. 126, 133, 139 S. W. (2d) 984, 988 (8), 129 A. L. R. 352.] [See also other recent cases cited in 10 West's Mo. Dig. ''Damages,'' sec. 127, p. 11, pocket part.]

Nevertheless it is our opinion that the judgment below for $23,400 (after deducting the interest discounted) is such that we cannot

[1]Pitcher v. Schoch, 345 Mo. 1184, 139 S. W. (2d) 463 ($18,000 reduced to $13,000); Christiansen v. St. Louis Public Service Co., 333 Mo. 408, 62 S. W. (2d) 828 ($18,000 reduced to $15,000); O'Brien v. Rindskopf, 334 Mo. 1233, 70 S. W. (2d) 1085 ($20,000 reduced to $12,500); Crockett v. K. C. Rys. Co. (Mo.), 243 S. W. 902 ($15,000 reduced to $10,000); Lackey v. M. & K. I. Ry. Co., 305 Mo. 260, 264 S. W. 807 ($10,000 reduced to $7,500); Dorman v. East St. L. Ry. Co., 335 Mo. 1082, 75 S. W. (2d) 854 ($10,000 reduced to $7,500); Rogles v. United Rys. Co. (Mo.), 232 S. W. 93 ($16,000 reduced to $12,000); Corn v. K. C. & St. J. Ry. Co., 228 S. W. 78 ($16,000 reduced to $7,500); Osby v. Tarlton, 336 Mo. 1240, 85 S. W. (2d) 27 ($10,000 reduced to $6,000); Morris v. Atlas Portland Cement Co., 323 Mo. 307, 19 S. W. (2d) 865 ($20,000 reduced to $8,000); Weaver v. Mobile & Ohio R. Co., 343 Mo. 223, 120 S. W. (2d) 1105 ($17,000 reduced to $11,000).

interfere, regardless of the county in which the case was tried. In many of the decisions cited by appellants the plaintiff was a woman about the age of respondent. But in none of them was there a combination of circumstances such as this record presents. When it is considered that the respondent suffered fracture of the nose, jaw, three ribs and both bones of the lower leg, together with disfigurement, nerve destruction, some permanent nervous and physical impairment and disability; and that with all these painful injuries she was forced to undergo treatment without the use of anaesthetics; we can see no reasonable justification for forcing a further reduction in the damages. All concur.