Lawrence MARTIN, Respondent,

v.

Glynn TURNER and John S. Chapman, Appellants.

No. 46027.

Supreme Court of Missouri, Division No. 1.

Nov. 12, 1957.

State Highway No. 21 near Old Mines,. Missouri, on the night of August 27, 1955,. in which collision plaintiff's left arm was amputated. Defendants have appealed, alleging: (1) that the evidence establishes. as a matter of law that the amputation. of plaintiff's arm was directly due in whole or in part to his own negligence in operating his automobile with his left arm. or elbow protruding from it; or, if such negligence was not established as a matter of law, that a submissible issue thereof was made and the court erred in the refusal of defendants' proffered instruction "B" submitting such issue; (2) error in plaintiff's instruction "P–2" defining the degree of care required of operators of. motor vehicles upon the public highways. of this state; (3) error in plaintiff's instruction "P–4", declaring the measure of plaintiff's recovery for the damages to his automobile; and (4) that the verdict and judgment predicated thereon is grossly excessive. The disposition we make of the case makes it unnecessary to consider the last mentioned assignment.

On the evening of August 27, 1955, plaintiff and his wife, after spending about two hours in Vern Hayes' Tavern, south of Potosi, Missouri, went to a restaurant in Potosi for sandwiches and coffee. There is evidence on the part of defendants that while at the tavern plaintiff, although "not too drunk", had consumed beer to the extent that "he was staggering". There is evidence on the part of plaintiff that although he had consumed several beers he was not intoxicated. About one o'clock, a. m., plaintiff and his wife left Potosi in plaintiff's automobile enroute to their home in the City of St. Louis, traveling northward on Highway 21, a two-lane concrete highway, with a white center line marker.

Plaintiff's evidence tended to show that he and his wife proceeded northward in his 1952 4-door Pontiac sedan at a leisurely speed of 30 to 35 miles per hour and that he continuously drove his auto-

Carter & Fitzsimmons, Paul E. Fitzsimmons, Clayton, for appellants.

Manion & Hawk, James E. Hawk, Jr., St. Louis, J. O. Swink, Farmington, for respondent.

HOLLINGSWORTH, Presiding Judge.

Plaintiff recovered judgment in the sum of $35,000 for personal injuries and property damage sustained in a "sideswiping" collision of his automobile with a motor truck owned by defendant Turner and operated by defendant Chapman in the course of his employment by Turner on

mobile entirely upon the right (east) lane of the highway. They went down a hill and thence up a leftward curving incline to a point approximately midway of the curve, at which point plaintiff first saw the headlights of defendant Turner's southbound approaching truck some "four or five car lengths" from them. The truck was then one-quarter to one-third of its width over (to the east of) the center line. Plaintiff immediately applied his brakes and veered his car to the right (east) shoulder, so that the right wheels of his automobile were on the shoulder, practically stopped, at which time the truck struck his automobile, "just like hitting a concrete wall". Plaintiff testified, on direct examination, that from the time he first saw the truck until it struck his automobile, his elbow was "up on the door with the fingers on the steering wheel * * * it was not hanging outside of that door."

Plaintiff and his wife discovered that his arm was missing. His wife got out of the car. He attempted to put the car in neutral but mistakenly shifted it into reverse. The car rolled on its wheels backward down an embankment until it struck a tree. Plaintiff was taken to the St. Louis County Hospital, where it was found that he had "sustained a traumatic amputation of his left arm near the shoulder."

On cross-examination, plaintiff admitted that his left elbow protruded out of the open window in the front door of his automobile as he drove to the point of collision and, for a time, continued to insist that the fingers of his left hand were upon the steering wheel. However, he further testified that he had a "spinner affair" or "handle" (knob?) attached to the steering wheel, and latter admitted that he could not remember whether he used both hands in turning to the shoulder. It was called to his attention that in a priorly given deposition he had testified:

"Q. When you started to make that turn you are talking about you said

that you made that very abrupt turn did you use both hands to make that turn? A. No."

Thereupon, he further testified:

"Q. * * * When you had your deposition taken you testified that you didn't use both hands, you just used one, and now you say that you don't recall? A. Well, I don't.

* * * * * *

"Q. So you don't know whether the —again you don't know whether you used them or not? A. That's right.

"Q. From the time you saw the truck over on your side of the road until the time of the collision you don't know whether you moved your arm or not, your left arm? A. I couldn't say."

State Highway Patrolman Clarence Maddox testified in behalf of plaintiff: He went to the scene of the collision about nine o'clock on the morning of August 28. The truck involved in the collision had a livestock rack on it. There were particles of meat and bone on the left front corner of the rack. These particles were strewn along the left side of the rack nearly to its rear. None of the tires was deflated. Bits of chrome, bone and flesh and spots of blood were on the east edge of the pavement "some distance north of approximate point of the impact". There were particles of glass apparently from a car mirror on the front portion of the left corner of the truck bed. There was nothing to show that the truck had come into contact with the automobile other than the aforesaid particles of glass. "Q. In other words you'd be able to state that it had not come into contact with another automobile? A. Apparently not."

Defendants' evidence was that, after delivering a load of cattle to East St. Louis, Illinois, defendant Chapman was returning to Potosi on the morning in question in defendant Turner's truck. Chapman first

saw plaintiff's car as plaintiff was driving around a curve. Both vehicles were traveling about 45 miles per hour. Chapman was on his right (west) side of the highway. At that moment plaintiff was "pretty well on his own side of the road". Chapman continued on his (west) side of the road. When the vehicles were "around seventy-five feet" apart, plaintiff drove his car across a yellow line paralleling the white center line, causing Chapman to turn his truck "upon the shoulder of the road to the right." "There wasn't too bad of a jar", but Chapman knew that something had run into his truck. Plaintiff's car did not strike the front of the cab of the truck at all, but it did sideswipe the truck some place. Chapman drove to a wide spot in the road, looked back, heard screaming, drove on to a point where he could and did turn his truck around and went back to plaintiff's car, and thence to the office of the sheriff to summon aid. The side of the truck showed no evidence of collision other than some blood on it, but the tire on the left outside dual wheel was "busted", "it didn't go down right now", but it had a hole jabbed in it and had to be replaced.

Plaintiff's Exhibit "A", introduced in evidence by plaintiff, is a photograph of the front and left side of plaintiff's automobile, taken after the collision. No damage is shown to the hood or the front of either front fender or to the car frame at the level of the windows. The windshield, the windows and the headlights are unbroken. A rear view mirror projects, undamaged, from the front of the frame on the right side of the car. If there was a like mirror on the left side, as presumably there would be, it seems to have been torn from the car in the collision. An indentation in the left side of the frame begins immediately to the rear of the left headlight and extends horizontally backward just above the level of the top of the left front wheel to midway of the longitudinal center of the car and apparently some twelve inches below the windows on the left side of the car. A similar indentation appears across the left

rear fender immediately above the top of the rear left wheel. Plaintiff, when asked the cause of the above described damage to his car, answered, "Sideswipe by truck."

Defendants' insistence that plaintiff was guilty of contributory negligence as a matter of law is based upon some of the statements made in the case of Wininger v. Bennett, Mo.App., 104 S.W.2d 413. It is true that the evidence in that case is analogous in its essential respects to the evidence in the instant case and the conclusions therein reached constitute well reasoned authority for defendants' contention that a submissible issue was made of plaintiff's contributory negligence in continuing to operate his automobile with his left elbow protruding from the window after he saw the truck encroaching upon his side of the highway. We are unwilling to hold, however, that the Wininger case is soundly reasoned in its ruling that the evidence in that case showed plaintiff to be guilty of contributory negligence as a matter of law. In the case of Moore v. Middlewest Freightways, Inc., Mo., 266 S.W.2d 578, 581–582, we had occasion to make a critical analysis of the Wininger case, and, after a review of the evidence and the ruling thereon, concluded that: " * * * although called upon to decide only the question of plaintiff's contributory negligence as a matter of law, from the viewpoint of plaintiff's evidence, the court, in effect, determined the case upon its merits in accordance with what it believed the facts to be." And, in the later case of Marsh v. Heerlein, Mo., 299 S.W.2d 441, loc. cit. 443, wherein the fact situation was similar to the instant case, we said: "And here, again, we do not wish to say that, as a matter of law, it is negligence, in circumstances like those which plaintiff's testimony tends to establish as obtaining in this case, for one to have one's arm or elbow protruding from the window of an automobile. It is our opinion that in this case, at best, specific contributory negligence in this respect would have been for the jury." We hold that the evidence in the instant case does not show plaintiff to have

been guilty of contributory negligence as a matter of law. But the question of whether defendants made a submissible case of plaintiff's contributory negligence in continuing to operate his car with his elbow protruding through the window after he saw the dangerous approach of the truck is another matter.

■■ Plaintiff would avoid decision of the merits of that question on the ground that defendants did not specifically plead the fact of his contributory negligence in that respect. Defendants' answer pleaded that "whatever injuries * * * plaintiff sustained * * * were the direct and proximate result of plaintiff's own negligence, directly contributing thereto, in that * * plaintiff failed to exercise the highest degree of care in the operation of his automobile * * *." Plaintiff's contention must be overruled. A general plea of contributory negligence, in the absence of an attack thereon—there was none in this case—is sufficient. State ex rel. Shell Petroleum Corp. v. Hostetter, 348 Mo. 841, 156 S.W.2d 673, 677 et seq.; Kobusch v. Ruberoid Co., 355 Mo. 48, 194 S.W.2d 911, 913–914.

■ We are convinced that the evidence above narrated, including the testimony of the witnesses and the photograph of plaintiff's car, reasonably would support a finding of fact, that in the exercise of the highest degree of care for his own safety in the operation of his own automobile, plaintiff could have withdrawn his elbow into his automobile after he saw the truck dangerously encroaching into his lane of travel some four or five car lengths from him; that he negligently failed to do so; that had he done so his arm would not have sustained any major injury; and that therefore his negligence was a directly contributing cause of the loss of his arm. Wininger v. Bennett, Mo.App., 104 S.W.2d 413; Marsh v. Heerlein, Mo., 299 S.W.2d 441; Annotation 40 A.L.R.2d 233, 240.

■ The court refused instruction "B" proffered by defendants as a proper submission of the issue of plaintiff's negligence, to wit:

"The Court instructs the jury that it is the duty of the driver of an automobile at all times to drive the same with the highest degree of care, that is, that degree of care which a very careful and prudent person would exercise under the same or similar circumstances.

"You are further instructed that if at the time of the collision mentioned in the evidence the plaintiff was driving his vehicle with his left arm or elbow hanging out of the window, if you so find, and if you further find that plaintiff by the exercise of the highest degree of care saw or should have seen the danger of collision in time to have gotten his arm into the automobile and out of danger, if you so find, and if you further find that plaintiff's failure to move his arm, if he did so fail, caused or contributed to cause his injury, and was negligence, then your verdict must be for the defendants, * * *."

Plaintiff says the instruction is neither within the pleadings or evidence; that there was no evidence that plaintiff's left arm or elbow or any portion thereof was still on the door at the time of the collision; and that there was no evidence to support a finding that had plaintiff's arm been inside the car it would not have been injured. Defendants' pleading and the evidence above set forth clearly refute each of those contentions.

■ Plaintiff also says the instruction erroneously hypothesizes a finding of which there is no evidence, to wit: that plaintiff was driving his automobile "with his left arm or elbow hanging out of the window." The words "hanging out" may or may not precisely describe a protruding arm or elbow, but we are convinced they could not

prejudicially have misled the jury. The jury heard the evidence and saw the photograph, coupled with plaintiff's admission that his elbow was protruding. The fact of a traumatic amputation of plaintiff's arm near the shoulder, considered in connection with all the other facts and circumstances in evidence, warrant a finding that a substantial portion of plaintiff's arm was exposed at the time the vehicles collided. We think it was not necessary that the instruction limit the submission to a designated segment of plaintiff's arm. The objection is hypercritical and must be overruled.

■ And finally, plaintiff says that instruction "D–5", given at the instance of defendants, "completely embodied defendants' theory of their case as shown by the pleadings." That instruction simply directed a finding for defendants if the jury found from the evidence that plaintiff "failed to keep and drive his automobile as close to the right hand side of the highway as was then and there practicable, that he caused or permitted his automobile to run west of the center line of said highway and to run into and strike the truck being driven by John S. Chapman, if you so find, then Lawrence Martin was guilty of negligence, and if you further find that such negligence, if any, on the part of said Lawrence Martin caused or contributed to cause whatever injuries plaintiff sustained, if any, then you are instructed that plaintiff is not entitled to recover * * *." The specific negligence hypothesized in that instruction would not preclude defendants from submitting the further issue of plaintiff's negligence in operating his automobile with his elbow protruding from the window. The court erred in refusing instruction "B".

■ At the request of plaintiff, the trial court gave instruction "P–2", in words following:

"The Court instructs the jury that any person operating an automobile * * upon * * * a public * * * highway * * * is required to use the highest degree of care that a very careful person would use under like or similar circumstances to prevent injury or death to persons on * * * such * * highways * * * and * * * the absence of such care constitutes negligence", etc.

The phrase "highest degree of care", as used in the statute (Section 304.010 RSMo 1949, V.A.M.S.) defining the duty of persons operating motor vehicles upon the highways of this state, means "that degree of care that a very careful and prudent person would ordinarily exercise under the same or similar circumstances." The definition set forth in the instruction falls far short of the requirements of the statute and the instruction was therefore prejudicially erroneous. Jungeblut v. Maris, 351 Mo. 301, 172 S.W.2d 861, 863 [4–7]; Burlingame v. Landis, 362 Mo. 523, 242 S.W.2d 578, 580.

Inasmuch as this cause must be reversed and remanded, it is unnecessary to discuss at length whether the court prejudicially erred in the giving of plaintiff's instruction "P–4" as to the assessment of any damages awarded plaintiff for the injuries done to his automobile. The instruction can be redrafted at any future trial to comply with the true measure of damages. In this connection, see Hall v. Clark, Mo., 298 S.W.2d 344, 350; Hayes v. Dalton, Mo.App., 257 S.W.2d 198, 201.

For the reasons stated, the judgment is reversed and the cause remanded.

All concur.