Walter H. SHEPARD and Rita M. Shepard,
Respondents,

v.

Jackie HARRIS, a Minor, Appellant.

No. 46826.

Supreme Court of Missouri,

En Banc.

Nov. 12, 1959.

**4**

Ford & Ford, Elbert L. Ford, James F. Ford, Kennett, for defendant-appellant.

James F. Ford, Kennett, guardian ad litem for defendant-appellant.

Ward & Reeves, Caruthersville, for respondents.

COIL, Commissioner.

Walter and Rita Shepard recovered $15,-000 as damages for the alleged wrongful death of their son Larry, who died as a result of injuries sustained when an automobile in which he was a passenger and being driven by 17-year-old defendant, Jackie Harris, overturned. Defendant, through his duly appointed guardian ad litem, has appealed from the ensuing judgment and contends in 21 separate points that the trial court erred: In refusing to direct a defendant's verdict at the close of all the evidence on the ground that plaintiffs' decedent was contributorily negligent as a matter of law, in the giving of instructions, in the admission of evidence, and in refusing to declare a mistrial for improper statements by plaintiffs' attorney on voir dire, during the trial proper, and in jury argument; and he also contends that the judgment is grossly excessive.

About 7:30 p. m. on May 11, 1957 Jackie Harris was driving his father's automobile eastwardly on black-topped county road A between Wardell and Hayti in Pemiscot County. Larry Shepard was a front-seat passenger. The automobile went south off the paved surface and out of control, back across the road, and ended up overturned in a field some 30 feet north of the road's north edge. There was testimony that the reason Jackie Harris turned off the pavement was to avoid a westbound automobile which was occupying the middle of the highway. Inasmuch, however, as there is no contention that plaintiffs did not make a submissible case in so far as concerns defendant's negligence, we shall here discuss only that evidence which is pertinent to defendant's contention that as a matter of law plaintiffs' decedent was contributorily negligent.

Plaintiffs called defendant to testify as a witness in their behalf under the provisions of section 491.030. (All section references are to sections of RSMo 1949, V.A.M.S.) Plaintiffs were entitled to prove an essential part or parts of their case by the testimony of the defendant and

thereby be bound only by that part of defendant's testimony which they offered and thus vouched for as the truth. What defendant may have said upon examination by his own counsel and thus presumably in his own behalf was in no way binding on the plaintiffs. Lolordo v. Lacy, 337 Mo. 1097, 88 S.W.2d 353, 355 [3–7]; Missouri Cafeteria v. McVey, 362 Mo. 583, 242 S.W.2d 549, 555, 556; Hall v. Brookshire, Mo.App., 285 S.W.2d 60, 64 [2, 3].

We note then the evidence pertinent to the contributory negligence issue by which plaintiffs were bound. Defendant's testimony offered by plaintiffs was that he and Larry Shepard were friends and on the evening in question intended to go to a picture show in Hayti; that about 7:30 p. m., dark enough for headlights which he had on, he drove eastwardly on county road A, an 18'-wide black top which was wet and slick, patched, and somewhat uneven, at a speed between 60 and 75 miles per hour, perhaps faster; that he had maintained that speed for several miles prior to the collision, and that the vehicle upset and overturned. The only other evidence adduced by plaintiffs which might have been material on decedent's contributory negligence was that immediately prior to and at the time of the accident, it was drizzling rain and that defendant was and had been for at least 1¼ miles driving at a speed of at least 90 miles per hour and that the road's shoulders were muddy and not in good condition.

█ It is true, as defendant contends, that his proof tended to show that deceased made no protest as to the speed at which defendant drove or in any other way tried to influence the manner in which defendant operated the vehicle, and, in fact, said nothing until they each saw at the same time one headlight proceeding toward them in the middle of the road, whereupon deceased remarked about that "crazy so and so," and defendant turned the car off the paved surface in order to avoid colliding with the approaching automobile. As we have heretofore stated, however, plaintiffs were not bound by the evidence adduced by defendant. Consequently, it seems apparent, in the absence of evidence by which plaintiffs were bound that decedent did nothing to attempt to influence the situation for safety as the defendant drove the automobile eastwardly, that decedent could not have been contributorily negligent as a matter of law. The jury was at liberty to believe or disbelieve that part of defendant's testimony as to decedent's failure to protest defendant's speed or to protest otherwise the manner of his driving. While it would seem doubtful that, even though plaintiffs had been bound by all the evidence, including that adduced by defendant, decedent was contributorily negligent as a matter of law, nevertheless, we need go no farther in this case than to hold that decedent was not as a matter of law contributorily negligent under the only evidence by which plaintiffs were bound.

Plaintiffs submitted their case on excessive speed under the shown circumstances. Defendant's amended answer affirmatively pleaded that decedent's negligence contributed to cause his injuries and death. The evidence pertaining to decedent's contributory negligence has been stated. Defendant submitted the negligence of the unknown driver of the westbound automobile as the sole cause of decedent's injuries and death. Defendant did not submit to the jury the issue of decedent's contributory negligence which had theretofore been in the case by virtue of the pleading and proof. Plaintiffs' instruction 1 did not negative decedent's contributory negligence. Defendant contends that plaintiffs' instruction 1 was thereby prejudicially erroneous.

A rule which upon present examination appears to be illogical, nevertheless has become settled in this state, viz., that a plaintiff's verdict-directing instruction which "omits therefrom a finding upon a pleaded issue of plaintiff's contributory negligence, supported by substantial evidence, is prejudicially erroneous unless such error is cured by the defendant's submitting that issue * * *." Bowyer v. Te-Co, Inc., Mo., 310 S.W.2d 892, 897 [4]. The rule has been

criticized. See Guiley v. Lowe, Mo., 314 S.W.2d 232, 235.

■ Contributory negligence is an affirmative defense, section 509.090, and must be pleaded before it may become an issue in any case unless plaintiff's own evidence demonstrates as a matter of law that he is contributorily negligent. Cash v. Sonken-Galamba Co., 322 Mo. 349, 17 S.W.2d 927, 929 [3]. If plaintiff's evidence does not as a matter of law demonstrate his contributory negligence, then, even though his own evidence constitutes substantial evidence of his contributory negligence, defendant is not entitled to submit that issue to a jury unless it has been affirmatively pleaded. Taylor v. Metropolitan St. R. Co., 256 Mo. 191, 165 S.W. 327, 334 [10].

■■ There is no question that under Missouri substantive law plaintiff's freedom from contributory negligence is not a constitutive element of a plaintiff's action to recover damages. Brady v. St. Louis Public Service Co., 361 Mo. 148, 233 S.W. 2d 841, 844 [5, 6]. It follows, of course, that in Missouri contributory negligence is a matter of defense only, proof of which, evidenced by a jury finding, will *defeat* plaintiff's claim. Redick v. M. B. Thomas Auto Sales, Inc., 364 Mo. 1174, 273 S.W.2d 228, 235.

■■ It seems clear then that a plaintiff's failure to negative his contributory negligence in a verdict-directing instruction is neither an omission of an essential element of his claim nor in any sense a misdirection as to the law. A plaintiff may recover when he has proved, in the jury's judgment, the essential elements of his case. It follows that he is entitled to recover, irrespective of what the evidence may show as to contributory negligence (short of contributory negligence as a matter of law) unless his recovery is defeated by the jury's finding for defendant on defendant's affirmative defense pleaded, supported, *and submitted*. If defendant does not submit a defense, even though it has been pleaded and supported by evidence, plaintiff should not be required to hypothe-

size for recovery any facts which go beyond plaintiff's own theory of recovery. Easterly v. American Institute of Steel Construction, 349 Mo. 604, 162 S.W.2d 825, 827 [2, 3]. There is no reason which occurs to us why the usual rule of abandonment should not apply to the issue of contributory negligence in the same manner and to the same effect as it applies to other defenses, including affirmative defenses, and, if so, defendant has abandoned his affirmative defense of contributory negligence when he fails to submit it. Upon such abandonment, plaintiff's contributory negligence ceases to be an issue in the case.

In Lewis v. Oliver, Mo.App., 220 S.W. 2d 748, 752, it is said: "The answer of defendants pleaded several defenses in addition to the one above mentioned. One of those defenses was that there was no meeting of the minds of the parties to the alleged agreement in that defendants understood and believed that the price agreed upon was 25 cents per cubic yard instead of 25 cents per cubic foot. Defendants offered, and the court gave, an instruction submitting this defense. No other instructions were offered by defendants. Defendants, therefore, voluntarily abandoned all other defenses and cannot complain that plaintiff's instruction failed to cover these abandoned defenses. Rhineberger v. Thompson, 356 Mo. 520, 202 S.W.2d 64; Zambruski v. Ludewig, Mo.App., 110 S. W.2d 825; Billingsley v. Kansas City Pub. Serv. Co. [239 Mo.App. 440], 191 S.W.2d 331; Hill v. Landau, Mo.App., 125 S.W.2d 516; Studt v. Leiweke, Mo.App., 100 S.W. 2d 30."

And it is the law that "where a defendant requests the submission of one or more of several pleaded specific charges of affirmative defense and does not request the submission of the other specific charges, he will be considered to have voluntarily abandoned the latter although they were supported by substantial evidence. Billingsley v. Kansas City Public Service Co., [239 Mo.App. 440], 191 S.W.2d 331; Hill v. Landau, Mo.App., 125 S.W.2d 516; Studt v. Leiweke, Mo.App., 100 S.W.2d 30.

See also Zambruski v. Ludewig, Mo.App., 110 S.W.2d 825; and compare with Pence v. Kansas City Laundry Service Co., supra [332 Mo. 930, 59 S.W.2d 633]." Rhineberger v. Thompson, 356 Mo. 520, 202 S.W. 2d 64, 70. If, under the law above, *one or more* of several specific charges of an affirmative defense is or are abandoned by defendant's failure to submit them, does it not necessarily follow that *all* the specific charges of a given affirmative defense are likewise abandoned by failure to submit *any of them* and thus that the affirmative defense as a whole thereby has been abandoned?

■ The rhyme or reason for the existence of the present rule is not apparent to us, nor have we found a logical explanation for it. When, upon re-examination, it appears that a reason for a rule does not exist, the rule itself should no longer obtain. We are of the opinion and therefore hold that when a defendant fails to submit the affirmative defense of contributory negligence he has thereby abandoned that defense and it no longer remains an issue in the case for any purpose, and, consequently, a plaintiff's verdict-directing instruction which ignores such abandoned issue of contributory negligence is not erroneous.

Defendant contends that plaintiffs' instruction 1 is subject to the construction that defendant's hypothesized negligent speed was not limited to accident time but that the jury was authorized to find defendant negligent if he drove 75 to 90 miles per hour *any place on the road* in question. The instruction, after requiring preliminary findings with respect to the relationship of plaintiffs to decedent, etc., was: "and that on said date the said Larry Dean Shepard was riding in a Pontiac automobile then and there being operated by defendant Jackie Harris in an easterly direction along and upon Count[y] Road 'A' *at a point about three miles East of Wardell, Missouri, and approaching an intersection with a graveled road mentioned in the evidence,* and if you further find that the said County Road 'A' was a blacktop road approximately 18 feet in width and

that at said time and place the pavement was wet and slick, and a light rain was falling, and that it was dusky dark, and if you further find and believe from the evidence that under the said circumstances *the defendant Jackie Harris drove and operated the said Pontiac automobile at a speed 75 to 90 miles per hour upon said road, and* if you further find and believe from the evidence *that it was negligent for defendant Jackie Harris to operate the said Pontiac at 75 to 90 miles per hour under the said circumstances* and that as a direct result thereof the said Pontiac automobile ran off of said roadway and overturned resulting in the death of Larry Dean Shepard on May 11, 1957, then you are instructed that your verdict shall be in favor of the plaintiffs Walter H. Shepard and Rita M. Shepard, and against the defendant Jackie Harris." (Our italics.)

■ We think a reading of the foregoing instruction, noting particularly the italicized portions, demonstrates that a jury would understand that the speed which it was permitted to find constituted proximate causal negligence was the speed immediately preceding and at the time of the accident. It is apparent to us that "upon said road" refers to the place on that road described above as three miles east of Wardell and approaching an intersection with the graveled road mentioned in the evidence. See Douglas v. Twenter, 364 Mo. 71, 259 S.W.2d 353.

■ Defendant contends that the instruction fails to hypothesize all the essential controverted facts, and specifically that the instruction "does not require a finding as to where the Appellant was operating his vehicle, the distances involved, or the facts relating to the other vehicle, and whether there was any other traffic upon the road; facts pertaining to time, the condition of the berm of the highway and facts relating to Appellant running off the road * * *." The instruction hypothesized "where" the automobile was being operated. There were no "distances involved." There was no dispute in the evidence as to the loca-

tion and course of the "other vehicle." There was no evidence of any "other traffic" upon the road. There was no dispute about the fact that the "shoulders" were muddy. There was no controversy "pertaining to time." Why defendant ran off the road was not an essential fact of plaintiffs' recovery theory. There was no necessity under plaintiffs' recovery theory to have hypothesized the suggested evidentiary facts in view of the instruction's requirement that the jury must find defendant's excessive speed was proximate causal negligence. Snyder v. Jensen, Mo., 281 S.W.2d 802, 809 [2].

Plaintiffs' instruction 2 was: "The Court instructs the jury that in the event your verdict is in favor of plaintiffs Walter H. Shepard and Rita M. Shepard then in assessing their damages you will award the said plaintiffs such sum of money as will fairly and reasonably compensate the plaintiffs for the pecuniary loss, if any, which you find and believe from the evidence that the plaintiffs have sustained and will sustain as a direct result of the death of Larry Dean Shepard from the date of his death until he would have attained the age of 21 years, but your verdict may not exceed the sum of $25,000.00.

"The Court mentions this amount solely because such is the maximum recovery in a death action and because such is the amount sued for."

Defendant contends the language, "then in assessing their damages," assumes that plaintiffs suffered damages. The contention is without merit when the entire phrase in which those words appear is considered, viz., "then in assessing their damages you will award the said plaintiffs such sum of money as will fairly and reasonably compensate the plaintiffs for the pecuniary loss, *if any,* which you find and believe from the evidence that the plaintiffs have sustained," etc. *(Our italics.)*

■ Defendant says next that the instruction does not clearly inform the jury of the elements of damage which it was to consider, but is too broad and is thereby misleading and confusing. Defendant does not point out how or wherein the instruction fails to sufficiently inform the jury, but satisfies himself with the bald conclusions noted. The general language of instruction 2 has been often approved and if defendant was of the opinion that the jury would not sufficiently understand how to assess allowable damages, it was his province and duty to offer a clarifying and supplementary instruction. Brewer v. Rowe, 363 Mo. 592, 252 S.W.2d 372, 375, 376.

■ Defendant says further that the instruction gives undue prominence to certain facts. The only fact mentioned is the instruction's reference to the sum of $25,-000, which defendant says was not properly restricted. Defendant suggests, by citing the case of Jones v. Rash, Mo., 306 S.W.2d 488, 492 [5], that he means that mentioning the $25,000 figure in the foregoing instruction was tantamount to referring the jury to the pleadings for the ascertainment of a controverted issue, a practice proscribed by the Rash case. Obviously, the instruction here does not refer the jury to the pleadings for the ascertainment of a controverted issue, and in the absence of any attempt by defendant to restrict, clarify, or supplement it, we hold the instruction proper against the attacks made. See Hertz v. McDowell, 358 Mo. 383, 214 S.W. 2d 546, 548, 549 [1, 2]; Morton v. Southwestern Telegraph & Telephone Co., 280 Mo. 360, 217 S.W. 831, 836 [13]

■ Instruction 3 was: "The Court instructs the jury that in the event you find that defendant Jackie Harris was guilty of the negligence as submitted to you in Instruction No. 1, and if you further find that the said negligence of defendant Jackie Harris was attended by such circumstances as to evince a reckless disregard for the rights of others and a want of care indicative of indifference to the consequences, then you may in the exercise of your discretion increase the amount of the damages authorized in Instruction No. 2, on account of the aforesaid circumstances

and you should state your verdict in one lump sum as you believe from the evidence, within the aforesaid restriction, as you may deem fair and just, but your verdict may not exceed the sum of $25,000.00.

"The Court mentions this amount solely because such is the maximum recovery in a death action and because such is the amount sued for."

It is contended that the foregoing instruction authorizes the assessment of double damages and is confusing and misleading because not an integral part of instruction 2. Certainly it does not authorize the recovery of double damages. It does permit the jury to take into account aggravating circumstances, if any (as authorized by section 537.090), in determining the total amount of its award. Consideration of the aggravating circumstances was dependent upon a prior finding for plaintiffs under instruction 1. While it is desirable to give only one damage instruction, and while instruction 3 may not be a model, nevertheless it is not vulnerable to any attack made by defendant in the instant case. See Williams v. Excavating & Foundation Co., 230 Mo.App. 973, 93 S.W.2d 123, 127 [8, 9]. If any defect inheres by reason of its failure to sufficiently advise the jury as to specific matters it might consider in determining whether the circumstances amounted to aggravating circumstances, such should have been eliminated by a clarifying instruction offered by defendant. Hertz v. McDowell, supra.

■■■ Defendant's final complaint as to instruction 3 is that it repeats the $25,000 figure as the maximum amount allowable and sued for. Defendant claims that the jury would understand that it was to start with the $25,000 figure and deduct therefrom. We think that construction is wholly unjustified. "The matter of repetition or the elaboration of the same subject matter in an instruction is generally considered to be within the trial court's discretion and is not ordinarily held to be reversible error where not so considered by the trial court." Greenwood v. Wiseman, Mo., 305 S.W.2d 474, 477 [2]. Again we observe that it is preferable that there be only one damage instruction. It is clear, however, that we should not hold that the trial court abused its discretion in permitting the repetition of the $25,000 figure.

■■■ Plaintiffs' instruction 4 was: "The Court instructs the jury that by the terms, 'negligent', 'negligence' and 'negligently' as used in these instructions mean the want of the highest degree of care and the term 'the highest degree of care' means such care as a very careful and prudent person would have exercised under the same or similar circumstances."

Defendant says the instruction is erroneous because it omitted the word "ordinarily" from the phrase, "such care as a very careful and prudent person would have exercised," i. e., it should have been "such care as a very careful and prudent person ordinarily would have exercised."

In Eller v. Crowell, Mo., 238 S.W.2d 310, at page 315, we said: "This instruction properly defines the meaning of 'highest degree of care', with the one exception that it omits to state that it is such degree of care as a very careful and prudent person would *ordinarily* exercise under the same or similar circumstances. Jungeblut v. Maris, 351 Mo. 301, 172 S.W.2d 861, 863. The omission of the word 'ordinarily' would not seem to be of any consequence. The contention is without merit."

Defendant contends, however, that our more recent case of Martin v. Turner, 306 S.W.2d 473, is to the contrary. That defendant's conclusion in that respect is erroneous is demonstrated by reading the instruction there being considered, which in pertinent part was: "The Court instructs the jury that any person operating an automobile * * * upon * * * a public * * * highway * * * is required to use the highest degree of care that a very careful person would use under like or similar circumstances to prevent injury or death to persons on * * * such * * * highways * * * and * * * the absence of

such care constitutes negligence." 306 S.W.2d 478. It was held that the instruction did not properly define the "highest degree of care." Clearly it did not and the reason it did not was not because the word "ordinarily" had been omitted. The reason was that the instruction did not in fact define the "highest degree of care" but confusingly stated that one "is required to use the highest degree of care that a very careful person would use," etc.

Plaintiffs' instruction 5 was explanatory of, and in some respects a converse instruction to, defendant's sole cause instruction 9. It was: "The Court instructs the jury that with respect to Instruction No. 9, the term 'sole cause' means acts or conduct which were the sole cause of the collision without any contributing negligence whatsoever on the part of defendant Jackie Harris as submitted in Instruction No. 1.

"Therefore, if you find that the defendant Jackie Harris was negligent as submitted in Instruction No. 1 and thereby contributed to cause the collision in question then you cannot find the issue of 'sole cause' referred to in Instruction No. 9 in favor of defendant Jackie Harris, and your finding on this issue must be in favor of the plaintiffs."

Defendant's contention that the instruction ignores contributory negligence has been answered by what we have heretofore said with respect to the contributory negligence feature of plaintiffs' instruction 1.

 Defendant's total argument in support of his only other contention is, "The instruction gave the jury a roving commission as to the alleged negligence on the part of Appellant and the instruction is misleading, confusing and in conflict with the other instructions. Willey v. Fyrogas Co., 363 Mo. 406, 251 S.W.2d 635." Inasmuch as defendant has failed to point out how and wherein the instruction is misleading, confusing, or in conflict with other instructions, we rule the contention adversely to him without further comment, except to point out that almost identical instructions have heretofore been approved against various attacks. Baker v. Kansas City Public Service Co., 353 Mo. 625, 183 S.W. 2d 873, 875; Farmer v. Kansas City Public Service Co., Mo.App., 186 S.W.2d 766, 768 [1].

 Defendant's next complaint is that the trial court erred in reading the instructions in the particular sequence in which it did. While defendant characterizes the procedure of reading all of plaintiffs' instructions and then all of defendant's instructions as illogical and as giving undue prominence to plaintiffs' instructions and to their right to recover, defendant has failed to point out how or wherein the undue prominence occurred or how defendant was thereby prejudiced. The particular sequence in which instructions are read is within the trial court's discretion. 88 C.J.S. Trial § 326c, p. 854. No abuse of discretion appears and none is demonstrated.

The next four points will be considered together. Plaintiffs' witnesses, Elmer Latham, Joe Smith, Radie Smith, and Robert Clifton, testified that they lived at places on county road A from $1/4$ to $1\frac{1}{4}$ miles west of the collision point. They were permitted to testify as to the speed of defendant's automobile when it passed them. Three testified that defendant's automobile was traveling at least 90 and the other said between 85 and 90. Defendant contends that the trial court erred in admitting this evidence of defendant's speed at places remote from the collision point.

 Evidence of one's prior speed if unconnected with his alleged negligent speed at accident time may be too remote to tend to prove causal negligent speed at the time of the casualty. Douglas v. Twenter, supra, 259 S.W.2d 358 [6]. The difficulty with defendant's position, however, is that, as heretofore noted, defendant testified that his speed, whatever it was, remained constant from shortly after he left Wardell until immediately prior to the collision. Consequently, the speed testimony here in question was directly connected with defendant's alleged negligent speed

at accident time. If he passed the witnesses at 90 m. p. h. and maintained that same speed, then the testimony in question tended to prove defendant's speed at the time immediately prior to the accident. Long v. Mild, 347 Mo. 1002, 149 S.W.2d 853, 858 [13, 14].

It is also contended that some or all of the four witnesses did not have sufficient opportunity to make a credible speed estimate, were not qualified to form or give an opinion as to defendant's speed, and did not identify the automobile which they saw pass as defendant's.

We have examined the testimony of the four witnesses in question and, while it is true that each glanced up as defendant's automobile "zipped" by and while it is true that some of them were better qualified than others, nevertheless, we are convinced that their testimony was admissible and that its credibility and weight were for the jury. Johnson v. Cox, Mo., 262 S.W.2d 13, 15[3, 4]. The contention that the automobile the witnesses saw was not identified as the one involved in the accident seconds later is wholly untenable. While there was no direct testimony to that effect, the only reasonable inference from all the testimony is that the automobile which they saw speed by at 90 miles per hour was the one which overturned a short distance down the road.

■ Defendant's contention that the trial court erred in permitting defendant himself to testify as to his speed from the time he left Wardell, also on the ground of remoteness, has been answered by what we have said above. His further contention is that he should not have been permitted to testify that had he been traveling at a lower speed, e. g., 45 m. p. h., he might have avoided the accident. Defendant says such was a conclusion based entirely upon speculation and conjecture. We do not so read the record. It appears that it was defendant's opinion that if he had been "driving around 45" he might have kept his car from going out of control. We think defendant's judgment as to what he might have done controlwise at a slower speed

was material and relevant on the issue of proximate cause.

Defendant next contends that the trial court erred in permitting plaintiffs to testify as to the "acts, conduct, income, earning capacity and * * * associated matters * * * pertaining to" deceased as of two or three years prior to his death, on the ground that the relevant time of inquiry was the date of death. In Hamman v. Central Coal & Coke Co., 156 Mo. 232, 56 S.W. 1091, a wrongful death action, the court said at page 1094 of 56 S.W.: "There was no error committed in refusing to permit the witness David Hamman to testify as to what the deceased earned the year before he was killed, as what he was earning at the time of his death was the proper inquiry."

■ While apparently the court in no other Missouri case has discussed the question whether it is ever proper to permit a showing of decedent's earnings for various periods prior to his death, we do not understand the statement in the Hamman case, supra, as establishing or intending to establish a rule that such would under no circumstances be proper. While C.J.S. and Am.Jur., as well as an A.L.R. annotation, cite the Hamman case to the contrary, all recognize that the weight of authority is to the effect that evidence as to the earning capacity of a decedent or of one permanently injured is not necessarily limited to a showing of what he was earning at the time of his death or injury. 25 C.J.S. Death § 123, p. 1292; 16 Am.Jur., Death, § 211, p. 143; 130 A.L.R. 164. See also Jacobsen v. Poland, 163 Neb. 590, 80 N.W. 2d 891, 898; Heinrich v. Ellis, 113 Ind.App. 478, 48 N.E.2d 96, 99 [14–16]; Bach v. Giordano, 144 Conn. 183, 128 A.2d 323, 324; Temperly v. Sarrington's Adm'r, Ky., 293 S.W.2d 863, 868[1].

■ In Missouri we have consistently held that in determining pecuniary loss to survivors it is proper for the jury to take into account deceased's earning capacity. Jones v. Kansas City Ft. S. & M. R. Co., 178 Mo. 528, 77 S.W. 890, 898; Hawkins

v. Missouri Pac. R. Co., 182 Mo.App. 323, 170 S.W. 459, 465[18]. In Kribs v. Jefferson City Light, Heat & Power Co., Mo. App., 199 S.W. 261, 263[7], a wrongful death action involving a boy of 18, it was said: "It may be well to observe that in actions of this kind evidence of the boy's health, habits of industry, economy, etc., bearing upon the pecuniary loss suffered by his parents in being deprived of his services during the remainder of his minority are admissible, * * *."

It appears to us that what the instant 17-year-old decedent had earned from the time he was 14 or 15 to the date of his death was relevant and material evidence on the question of his earning capacity. It also seems apparent that the scope of the evidence as to a decedent's past earnings, his earning capacity, his conduct, and other matters bearing upon the pecuniary loss to the survivors, should depend upon the circumstances of each case and should be within the discretionary control of the trial court. That court in its discretion should determine whether particular evidence is too remote to be admissible. We have examined the evidence in question and find that the trial court properly kept the inquiry in the respects in question within reasonable bounds.

Defendant next complains of the failure of the trial court to declare a mistrial because of, or to have alternatively instructed the jury to disregard, statements by plaintiffs' attorney on voir dire examination with respect to the amount that had been sued for. The record shows that plaintiffs' counsel stated on voir dire, "This is a suit for wrongful death in the amount of $25,000.00. That is the amount fixed by statute." Out of the hearing of the jury, defendant objected on the ground that the statement was made to incite and obtain the sympathy of the jury and was prejudicial to defendant. The court overruled the motion for mistrial and a further request for an instruction to disregard. Plaintiffs' counsel then completed the statement he had begun by saying, "As I said

a moment ago, this is a wrongful death action. Under the law in Missouri a party * * * is authorized to sue for $25,000.00. That is the amount this suit is brought for. I want to ask all of you collectively whether there are any of you—." Out of the hearing of the jury defendant's counsel objected that the mention of $25,000 was highly prejudicial and his motion for mistrial was overruled and his request for a direction to the jury to disregard was denied. Plaintiffs' counsel then said, "I am almost afraid to say that again." Again out of the hearing of the jury, defendant's motion for mistrial for the asserted reason that plaintiffs' counsel was not in good faith in his conduct before the jury was overruled. Whereupon plaintiffs' counsel asked defendant's counsel if he was through and if plaintiffs' counsel might continue, and then asked the panel whether any member had any conscientious scruples about awarding that amount ($25,000), "if under the evidence and instructions of the Court you felt they were entitled to that amount?" There was an objection that that was an attempt to pledge the jury to a certain verdict before they had heard the evidence. The objection was overruled.

Our examination of the portion of the record above set forth convinces us that if plaintiffs' counsel was not wholly justified in every question asked and statement made, certainly nothing in his conduct even remotely suggests bad faith or any attempt to unduly influence or prejudice the jury; and that the trial court did not err in refusing a mistrial or a motion to instruct to disregard.

It is next contended that the court erred in refusing to discharge the jury because of two questions asked on voir dire about insurance. It is asserted that the questions obviously were for the purpose of improperly informing the jury of the fact of the existence of insurance. While it is true that voir dire examination concerning insurance should be conducted in good faith for the purpose of determining a juror's qualifications, defendant does not point out wherein the questions asked or

the manner in which they were asked violated that rule. It may not be presumed that simply because "insurance" questions were asked, they were asked in bad faith. The court limited counsel to two general questions. We find no merit in defendant's contention.

Defendant contends that the trial court erred in failing to declare a mistrial because, says defendant, plaintiffs' counsel asked unwarranted questions of defendant's counsel for the purpose of prejudicing him in the eyes of the jury. The record shows that plaintiffs adduced one of the doctors who saw their son at the hospital just prior to his death. The doctor was asked a hypothetical question in which the facts of the accident were hypothesized and his opinion sought as to whether the accident was the cause of death. Defendant's counsel objected "on the basis that all the essential facts have not been stated. The facts stated are not shown by the evidence. The foundation has not been laid for the question if asked and is based on conclusions." Plaintiffs' counsel then asked, "Are you contending that the boy wasn't killed in the car wreck?"

We are unable to ascribe any improper motive to plaintiffs' counsel in asking that question. It would appear that the doctor's testimony as to causation was more or less formal. No one disputed that Larry Shepard died of injuries suffered as a result of the automobile overturning. Consequently, it is understandable that plaintiffs' counsel was somewhat surprised at the objection made to the hypothetical question which was asked for the sole purpose of establishing causation. In any event, prejudice to defendant is not apparent and has not been demonstrated. The trial court did not abuse its discretion in refusing to declare a mistrial.

Defendant further contends that the trial court erred in failing to declare a mistrial or to reprimand plaintiffs' attorney for asking defendant's counsel a certain question in the presence of the jury and in another instance for refusing to instruct the jury to disregard statements of plaintiffs' counsel made in argument. We have examined those two instances and in both of them the trial court took the action requested by defendant's counsel at the time. Defendant asked for no other relief and may not now complain.

In two other instances defendant complains of the failure of the trial court to sustain his objections to certain argument of plaintiffs' counsel. We have examined those matters and find that while, in one of the instances the argument was improper, and while the trial court did not specifically rule either objection, defendant's counsel nevertheless seemed satisfied with the trial court's statements at the time and may not now convict the trial court of error for failing to have taken further action.

Defendant's final contentions are that the verdict is excessive and so excessive as to indicate bias and prejudice. Our holding hereinafter that the verdict is not excessive necessarily rules adversely to defendant the contention that it is so excessive as to indicate bias and prejudice.

Deceased was 17 years and 7 months old at the time of his death. The evidence showed that he was a healthy, popular, intelligent, active, young man; a good and willing worker. He had completed high school and was to graduate a few days following his death. During school he helped in his father's furniture store, having customarily opened and cleaned it and worked after school until closing time. He also worked some in a grocery store. During the summers he had picked cotton and worked as a soot boy in a cotton gin. During a short sojourn in the State of California, deceased had washed automobiles and helped his father on a used-car lot. He retained all the money he made on the various jobs and his father paid him $25 per week during the summer for helping in the furniture store and $5 a week in the nature of an allowance during the school months, and, of course, his father furnished the necessities. At home

deceased scrubbed floors, often prepared meals, fed and sat with his 4-year-old baby sister, mowed the yard, and washed the automobile. He was described by his high school coach as a better-than-average student and a good athlete.

In McCrary v. Ogden, Mo., 267 S.W.2d 670, 676, we permitted a $10,000 verdict to stand in a wrongful death action wherein deceased was 17 years and 10 months of age and wherein the shown pecuniary loss in so far as demonstrable by mathematical calculation was similar to that in the instant case. We said there that "We should not arbitrarily say that a jury could not reasonably find that the pecuniary value of deceased's services to his parents would not have greatly increased during the remaining three years of his minority. He had just left school; he had just begun to earn. What situation would have developed which may have increased the value of his services to his parents is problematical." And we pointed out that the doctrine of Brewer v. Rowe, 363 Mo. 592, 252 S.W.2d 372, was applicable, viz., that in most cases the amount of a verdict in a wrongful death action, wherein deceased is a minor, involves some element of speculation on the part of the jury and such speculation or resolving of intangibles must usually be greater in the proportion that the minor's age is less than twenty-one. That doctrine is likewise applicable in the instant case.

In the McCrary case, however, unlike the fact in the instant case, the jury was not instructed that it could consider aggravating circumstances in determining the amount of its award. Having regard to the factual similarities in the instant and the McCrary cases and taking into account that in the present case the jury was at liberty to assess a sum as damages for such aggravating circumstances as it found, we shall not interfere with the instant jury's judgment that $15,000 was the fair and just amount for the necessary injury resulting from such death, having regard for the aggravating circumstances which attended the negligence resulting in such death. Section 537.090.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court, en banc.

All concur.